## THE STATE OF INDIANA, EX REL. BOARD OF COMMIS-
### SIONERS OF THE COUNTY OF STARKE, *v.*
### LARAMORE ET AL.

[No. 21,734.   Filed April 19, 1911.]

1. FEES AND SALARIES.—*Sheriffs.—Tax on Justice.—Constitutional Law.—Statutes.—Presumptions.*—That portion of §6528 Burns 1901, Acts 1895 p. 319, §122, providing that sheriffs shall charge, for selling property, a commission of three per cent on the first $300, and one and one-half per cent on any excess, except where the amount is paid without sale, when one-half of the above shall be charged, and for collecting fee bills, except their own, six per cent on the amount collected, does not violate article 1, §12, of the Constitution, providing that "justice shall be administered freely and without purchase," the fixing of the amount of fees or commissions being for the legislature, the courts having no judicial knowledge, and no means of ascertaining, whether the statutory amounts more than cover the cost of the services required, the presumption being that the statutory amounts fixed are just and reasonable. pp. 479, 481, 485.

2. STATUTES.—*Validity.—Prior Similar Statutes.—Constitutional Law.—Fees and Salaries.*—The fact that officers have been authorized to charge, for certain services, a percentage of the amount collected, since the act of 1824 (R. S. 1824 p. 196), should be considered in determining the validity of a similar provision in the act of 1895 (Acts 1895 p. 319, §122, §6528 Burns 1901). p. 481.

3. FEES AND SALARIES.—*Relation to Freedom of Justice.—Magna Charta.*—English statutes providing for poundage based upon a per cent are not in violation of Magna Charta providing that justice shall not be sold. p. 483.

From Starke Circuit Court; *Francis J. Vurpillat,* Judge.

Action by The State of Indiana, on the relation of the Board of Commissioners of the County of Starke, against Andrew J. Laramore and others. From a judgment for defendants, plaintiff appeals. *Reversed.*

*B. D. L. Glazebrook,* Prosecuting Attorney, and *George Burson,* for appellant.

*Beeman & Foster, Charles H. Peters, Henry A. Steis* and *Glenn D. Peters,* for appellees.

Cox, J.—This action was brought by appellant to recover on two official bonds, given by appellee Laramore as principal and the other appellees as sureties, covering said Laramore's two consecutive terms of office as sheriff of Starke county.

In this court questions are raised on rulings of the trial court on the pleadings, on appellant's motion for a new trial, and in stating its first conclusion of law on the facts specially found.

In view of the conclusion that must necessarily follow from a consideration of the case, no need arises to consider other than the last question. Counsel for both sides agree that the finality of the case involves but one question, and that is presented by the first conclusion of law.

In that part of its special findings of fact material here in the consideration of the question for decision, the court found, in substance, that during the first term of appellee Laramore as sheriff he collected and received as commissions on orders for the sale of real estate on executions and decrees, and as percentage for collecting fee bills other than his own, the aggregate sum of $517.59; that during his second term he collected and received for like services the aggregate sum of $1,034.69, and these sums he retained as his own, and failed and refused to pay such fees or any part thereof into the county treasury.

Upon these facts the court concluded the law to be with the defendants, on the ground "that so much of section 122 of the act approved March 11, 1895 (Acts 1895, p. 319, §6528 Burns 1901), as provides that 'the sheriffs of the various counties of this State shall, on behalf of their respective counties, * * * tax and charge the following amounts, to wit: * * * Selling property on execution or decree, a commission of three *per centum* on the first $300 and one and one-half *per centum* on any excess over that amount; but when the money is paid to him without sale, one-half of the above commission only shall be allowed. * * * For collecting fee bills, except for his

own fee, on the amount collected, six per cent,' is unconstitutional and void, as contravening article 1, §12, of the Constitution of Indiana, which provides that 'justice shall be administered freely and without purchase,' and that therefore there can be no recovery upon the official bonds in suit, the relators can take nothing by their action and that defendants recover costs." Upon this conclusion of law judgment was rendered in favor of appellees, and against appellant for costs. .

In the brief filed by appellees in their effort to sustain the judgment of the trial court, it is conceded that the legislature may provide by law what fees a public officer may charge for the performance of official duties, without infringing the particular phrase in the Bill of Rights before quoted, and this concession would seem to lead inevitably to the conclusion that the question involved in this case is foreclosed against appellees by the decision of this court in the case of *Henderson* v. *State, ex rel.* (1894), 137 Ind. 552, 24 L. R. A. 469. It is insisted that if the fees that the law requires the officer to collect from those to whom he has rendered official service, and to pay into the county treasury, are more than a just and reasonable compensation for the particular services performed, or more than is sufficient to cover the fixed salary of the officer, the act is in violation of said provision of the Constitution. And it is insisted that the commissions and percentages allowed in the particular matters involved are unreasonable in amount. In answer to this, it may be said that courts do not know judicially that the fees, commissions and percentages, which the act under consideration requires officers, having to do with the administration of justice, to collect from those who resort to the courts for settlement of their differences, would in any of the counties of the State amount to more than the salary of the particular officer, nor that the sum fixed by law, and collected for any particular service, would be unreasonable and extortionate and more than compensation

for the services rendered; nor have the courts authority to take evidence to inform themselves on these matters for the purpose of declaring the invalidity of the law.   The questions raised were for the legislative department to settle in framing the law in question, and we must presume that they took counsel and determined that the exactions provided for in the act were just and reasonable.

The provision for a commission as compensation to the sheriff for making sales on decretal orders and executions has been a part of all of the fee and salary laws enacted in this State since the act of January 30, 1824 (R. S. 1824 p. 196), the only difference between the provisions of that act and §6528, *supra*, being that the commission allowed to be collected in the act of 1824 was greater in per cent than in said §6528.   Surely this persistent legislative practice · is not without force in the consideration of the constitutionality of such provision.   *Hovey* v. *State, ex rel.* (1889), 119 Ind. 386; *Hovey* v. *State, ex rel.* (1889), 119 Ind. 395; *Spaulding* v. *Mott* (1906), 167 Ind. 58.

It is true that during most of this long period of time the fees, commissions and percentages went directly to the officer as compensation, and were not, as in the act of 1895, *supra*, required to be paid into the county treasury.   But on the theory of appellees, that the commissions and percentages provided are so unreasonable and burdensome in amount for the service rendered that the law giving them is a violation of this provision of the Constitution, it could make no difference whether the sums so collected went directly to the officer, or to the public treasury, for the wrong, if any existed, would be in the extortionate charges, and not in their destination.

In the cases of *Miles* v. *Ohaver* (1860), 14 Ind. 206, and *Kirland* v. *Robinson* (1865), 24 Ind. 105, while the validity of similar provisions for poundage to sheriffs was not raised, yet this court recognized the right of these officers under them to this sort of compensation.   It seems that the legis-

lative practice in basing compensation for these services of sheriffs on a percentage has not been broken by any judicial utterance of this court, but, on the contrary, that such expression as has been made is to the effect that such provisions are valid. The fee and salary act of 1871 (Acts 1871 p. 25) required a sheriff to pay over his fees to the county treasurer, to be kept in a fund out of which his salary was to be paid. Among the fees and charges therein fixed, which sheriffs were required to tax and collect, was a greater percentage for sales on executions and decrees than that provided in the act of 1895, *supra.*

In the case of *Wallace* v. *Board, etc.* (1871), 37 Ind. 383, the constitutionality of that act was assailed before and the contention was denied by, the trial court. On appeal, this court, then consisting of four judges, divided equally on the question whether the provision requiring a payment into the public treasury of the fees and charges taxed and collected authorized a tax on the administration of justice. This equal division necessarily resulted in an affirmance of the validity of the law. Worden, C. J., in his separate opinion stated his belief that so much of the act as required the officers to pay over to the public treasury these collections for services was in violation of the provision of the Constitution, that "justice shall be administered freely and without purchase," but that the act could be upheld so far as it fixed the amount of the fees and charges to be taxed and collected.

In the case of *Fulk* v. *Board, etc.* (1874), 46 Ind. 150, this court, then increased by another member, in a majority opinion referred to the case of *Wallace* v. *Board, etc., supra,* and stated a concurrence in the opinion of Worden, C. J., in that case, and held the provision of the law requiring the sheriff to pay his fees into the county treasury to be unconstitutional. So far as the case of *Fulk* v. *Board, etc., supra,* held that the provisions of a fee and salary act requiring the payment into the public treasury of the fees

and charges of officers, for services rendered to litigants by them, conflicted with article 1, §12, of the Constitution, it was disapproved in the case of *Henderson* v. *State, ex rel., supra,* which has stood unchallenged on the question up to the present time.

Upon this practical exposition of the attitude of both the legislative and judicial departments on this question, which is so largely one of legislative discretion, we would be constrained to hold that the ruling of the trial court was entirely unwarranted. Moreover the overwhelming weight of authority everywhere is to the effect that the imposition of fees and charges, such as are complained of in this case, is not in any sense a denial of the right of free and unpurchased justice. See 8 Cyc. 1138 and cases there collected.

Under English statutes of long continued existence, but enacted long after Magna Charta, sheriffs are given poundage based on a percentage substantially like that which has so long prevailed in our State, and it has never been suggested that this compensation was not in harmony with the guaranty of the great charter that justice should not be sold.

In considering a similar provision in the constitution of Rhode Island, the supreme court, in the case of *Perce* v. *Hallett* (1881), 13 R. I. 363, said: "The provision has a history which sheds light on its meaning. It was borrowed from Magna Charta, and in England the generality of jurists and legislators have supposed and acted on the supposition that it does not prohibit such fees. 1 Reeves' History of the English Law (Finlason's ed.) 284–287, and notes. The better opinion is that it was designed to abolish, not fixed fees, prescribed for the purposes of revenue, but the fines which were anciently paid to expedite or delay law proceedings and procure favor. See Thompson's Essay on Magna Charta, 230. The character of those fines is copiously exemplified by Madox in the twelfth chapter of his History of the Exchequer. They appear to have been

arbitrary exactions, often outrageously oppressive. Madox concludes his twelfth chapter with the following language: 'Some men used to pay fines to have or obtain justice or right; others, to have their right or their proceedings or judgment speeded; others, for stopping or delaying of proceedings at law; and others were obliged to pay great and excessive fines (viz., a fourth part, a third part, or half of the debt sued for) to obtain justice and right, according to their several cases, so that the king seemed to sell justice and right to some and to delay or deny it to others. Against these mischiefs a remedy was provided by a clause in the great charters of liberties, made by King John and King Henry III.' * * * In this country the provision has been widely copied into the declarations of right, which are contained in the state constitutions, and we are not aware that it has anywhere been held to prohibit such fees. In this state such fees have existed ever since the code of 1647. The digests of 1798 and 1822 contain not only tables prescribing such fees, but also statutory declarations of right, in which the language of article 1, §5, will be found, word for word, as it is in the constitution. The fee table was likewise reënacted immediately after the adoption of the constitution in the digest of 1844. It is evident, from these facts, that the fees were not then supposed to be obnoxoius to any constitutional objection. They are moderate in amount, and entirely insufficient to reimburse the state for the cost of the administration of justice. In the light of both history and legislative practice, therefore, we think the legitimate conclusion is, that the declaration of the constitution was intended to prohibit, not fees, like those prescribed in the fee table, but gratuities, or exactions, given or demanded for the direct purpose of influencing the course of legal proceedings."

This provision of our Constitution, while getting its substance, as similar provisions in other state constitutions do,

1. from Magna Charta, may be a broader guaranty of free, unpurchased and impartial justice than the similar provision in that great instrument sought to establish. And it might be, that were costs and fees imposed on those who resort to the courts for justice so burdensome as to result in a practical denial of justice to a large number of our people, the Constitution in that part under consideration would be violated. But the case before us does not appeal to us as seeking to protect the worthy litigant from oppression. The principal appellee, as sheriff, collected the money involved by virtue of the provisions of an existing law, which also bound him to pay it into the public treasury; and the bonds sued on obliged his sureties to see to it that he did so, on penalty of themselves being liable. It is clear that he is not entitled to retain the money as his own, as the finding of the trial court shows that he has done, and those who paid it to him are not complaining that the fundamental law has been outraged. We can but feel that had these fees gone by law to the sheriff, no claim would have been made that they were excessive, or that the law authorizing their collection placed an unlawful tax on justice.

We therefore hold that the provisions of §122 of the act of 1895 (Acts 1895 p. 319, §6528 Burns 1901) are not, in the particulars urged, in violation of article 1, §12, of the Constitution, and that the court below erred in stating its first conclusion of law and rendering judgment thereon against appellant.

The judgment is reversed, with instructions to the trial court to restate its conclusions of law in accordance with this opinion, and to render judgment for appellant.