**LAZARUS DEPARTMENT STORE,**
**Defendant–Appellant,**

v.

**Patricia SUTHERLIN and Richard Sutherlin, Plaintiffs–Appellees.**

**No. 30A01–8809–CV–276.**

Court of Appeals of Indiana,
First District.

Oct. 4, 1989.

Rehearing Denied Nov. 22, 1989.

James R. Fisher, Bette J. Dodd, Ice, Miller, Donadio & Ryan, Indianapolis, Michael J. Tosick, Greenfield, for defendant-appellant.

J. Lee McNeely, Mark W. McNeely, Stephen E. Schrumpf, McNeely, Sanders, Stephenson & Thopy, Shelbyville, for plaintiffs-appellees.

BAKER, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Lazarus Department Store (Lazarus), appeals a jury verdict rendered in favor of plaintiff-appellees, Patricia and Richard Sutherlin (Sutherlin), on their complaint for false imprisonment, malicious prosecution, and defamation.

We affirm.

## STATEMENT OF THE FACTS

On December 23, 1985, Mrs. Sutherlin visited Lazarus located in the Greenwood Park Mall in Greenwood, Indiana to complete her Christmas shopping for her family. Additionally, she intended to have her hair styled at the Lazarus Beauty Salon. Immediately upon arriving at the store, Sutherlin proceeded to the beauty salon located on the second floor to set up an appointment. After making her appointment, Sutherlin returned to the first floor to shop for her children. At the time she entered the store, Sutherlin had in her possession a Lazarus shopping bag in which were contained three sweaters she had previously purchased from Lazarus which she desired to return. Sutherlin did not bring with her the sales receipts for the items she was returning, however, believing that they were unnecessary as she had previously returned items to Lazarus without them.

During the course of her shopping, Sutherlin purchased two shirts for her son, a blouse for her daughter, and exchanged one of the previously purchased sweaters she had brought with her. Shortly after

1:00 p.m., Sutherlin opened a Lazarus charge account in order to purchase a jogging suit for her husband. She was informed that any other purchases she intended to make with the instant charge card within the next one-half hour should be conducted at the register at which she opened the account. After making the purchase, Sutherlin continued shopping.

She proceeded to another department of the store and observed a blouse which she considered purchasing for one of her two daughters. She removed the blouse from the rack and entered a dressing room to try it on. She exited shortly thereafter carrying the blouse across her arm. Sutherlin then approached the register at which she had opened her instant charge account as she had been previously instructed. She observed, however, that the register was not attended by a clerk. While waiting for a clerk to arrive, Sutherlin left the area and began to browse among several racks of sweaters near the north door of the store. At this point Sutherlin was approached by Becky Stanifer (Stanifer) and Susan Jones (Jones), undercover security operatives employed by Lazarus who had been monitoring Sutherlin's activity. Stanifer and Jones grabbed Sutherlin, displayed their security badges, and escorted her to the store security office. When Sutherlin was grabbed, the blouse across her arm fell to the floor and one of the pair picked it up and placed it in her shopping bag.

In the security office, Stanifer and Jones emptied Sutherlin's shopping bag as well as her purse. They obtained identification from Sutherlin and determined that she had in her possession three sweaters with Lazarus tags on them, a blouse, and a scarf with a Blocks tag. Throughout the ordeal, Sutherlin proclaimed her innocence explaining that she was waiting for the cash register at which she acquired her instant charge to open in order to purchase the blouse. Sutherlin provided receipts for the items she had purchased and a receipt for the sweater she had exchanged that day. She explained to Stanifer and Jones that she had previously purchased the sweaters in her possession and intended to exchange them but did not have a sales receipt for

the items. Stanifer and Jones ignored Sutherlin's protestations of innocence and upon completing a case report on the incident, contacted the Greenwood Police Department.

The police arrived shortly thereafter and handcuffed and transported Sutherlin to the Greenwood Police Department. At the Greenwood Police Department, Sutherlin was strip searched, photographed, and fingerprinted. After completing her processing, Sutherlin was handcuffed and transferred to the Johnson County Jail. At the Johnson County Jail, Sutherlin was again strip searched, fingerprinted, and photographed. She was then placed in a small holding cell until her husband was able to post bond and obtain her release later that day. Lazarus instigated criminal prosecution of the matter and on January 15, 1986, the Johnson County Prosecutor charged Sutherlin with theft. No probable cause hearing was held on the matter, however. Rather, the prosecutor proceeded to prosecute Sutherlin on the basis of the information contained in the Lazarus case report and probable cause affidavit executed by Stanifer.

In pertinent part, the case report provided as follows:

> Operatives Susan Jones and Becky Stanifer observed a woman enter the store through the west doors. We observed the woman several times approach a rack of clothes and pick a number of sweaters. She then entered the fitting room where we observed her place the sweaters in her shopping bag. She exited the fitting room where she then proceeded to exit the store through the north doors. Susan and I then approached the woman and asked her to come back to the security office.

*Record* at 549–50. Similarly, the probable cause affidavit read as follows:

> Becky Stanifer swears or affirms that she believes and has good cause to believe that on December 23, 1985, Patricia Ann Sutherlin came to Lazarus at Greenwood and went to several different racks of clothes and picked out merchandise.

The woman then went to the junior department where she went into the fitting room. I, Becky Stanifer and Susan Jones, Security Operatives, then observed her placing sweaters in her shopping bag. She then proceeded to exit the store through the north door. At this time we stopped her and asked her to come to the security office. She was identified as Patricia Ann Sutherlin by her driver's license and social security number....

*Record* at 666. Stanifer's affidavit of probable cause was the only document submitted to the trial court and no independent investigation was conducted concerning the allegations set forth therein.

Although originally charged with theft, a Class D felony, the prosecutor reduced the charge to two counts of conversion, Class A misdemeanors. On November 25, 1986, Sutherlin was tried by a jury and acquitted of the charges. Thereafter, Sutherlin instituted this suit against Lazarus for false imprisonment, malicious prosecution, and defamation. The jury returned a verdict in favor of Sutherlin awarding her $300,036.75 compensatory damages, together with punitive damages in the amount of $1,000,000. The jury also awarded compensatory damages to Richard Sutherlin, her husband, in the sum of $7,500. Lazarus subsequently instituted this appeal.

## ISSUES

Lazarus raises the following issues for our review:

I. Whether the trial court erred in denying Lazarus's motion for judgment on the evidence.

II. Whether the trial court erred in refusing to give Lazarus's tendered Instructions No. 3 and 4 regarding probable cause.

III. Whether the trial court erred in giving Preliminary Instruction No. 3 and refusing to give Lazarus's tendered preliminary instructions.

IV. Whether the trial court erred in refusing to give Lazarus's tendered Instruction No. 10.

V. Whether the award of compensatory damages is against the evidence and excessive.

VI. Whether the award of punitive damages is supported by clear and convincing evidence.

VII. Whether the award of punitive damages is excessive.

VIII. Whether the award of punitive damages violates the United States and Indiana Constitutions.

## DISCUSSION AND DECISION

### ISSUE I: *Judgment on the Evidence*

At the conclusion of Sutherlin's case-in-chief and again at the close of the evidence, Lazarus moved for a judgment on the evidence pursuant to Ind. Rules of Procedure, Trial Rule 50. The trial court granted the motion with respect to Sutherlin's defamation claim, but denied it with respect to Sutherlin's claims for malicious prosecution and false imprisonment. Lazarus assigns this as error on appeal.

A judgment on the evidence is appropriate when there is no evidence or legitimate inference to be drawn tending to support at least one of the plaintiff's allegations. *Saint Mary's Byzantine Church v. Mantich* (1987), Ind.App., 505 N.E.2d 811. The determination of whether the plaintiff has produced sufficient evidence to support her contentions is made by a two-step analysis of all the direct and circumstantial evidence available. *Dettman v. Sumner* (1985), Ind.App., 474 N.E.2d 100. The court must first determine whether there is reasonable quantitative evidence to support the plaintiff's allegations. If none exists, the motion should be granted. *Id.* If there is some evidence, however, the trial court must then determine whether a reasonable inference that the plaintiff's allegations are true can logically be drawn from that evidence. Such inferences may not be based upon undue speculation. *Id.* When reviewing a ruling upon a T.R. 50 motion, we consider only the evidence and reasonable inferences most favorable to the non-moving party.

In order to succeed on a claim for a malicious prosecution a plaintiff must establish that the defendant instituted or caused to be instituted a prosecution against the plaintiff, that the defendant acted maliciously in doing so, that the prosecution was instituted without probable cause, and that the prosecution terminated in the plaintiff's favor. *Johnson County Rural Electric Corp. v. Burnell* (1985), Ind.App., 484 N.E.2d 989. False imprisonment is defined as the unlawful detention of a person against his or her will. *Delk v. Board of Commissioners of Delaware County* (1987), Ind.App., 503 N.E.2d 436. We have stated that it is the probable cause to believe that a specific person had or was committing a theft of a merchant's property which makes a detention lawful. *Crase v. Highland Village Value Plus Pharmacy* (1978), 176 Ind.App. 47, 374 N.E.2d 58; IND. CODE 35–33–6–2.

As seen, the absence of probable cause is common to Sutherlin's claims for both false imprisonment and malicious prosecution. Probable cause exists where the facts found on reasonable inquiry would induce a reasonably intelligent and prudent person to believe that the accused had committed the crime charged. *F.W. Woolworth Co., Inc. v. Anderson* (1984), Ind.App., 471 N.E.2d 1249; *Satz v. Koplow* (1979), Ind. App., 397 N.E.2d 1082. Further, prima facie evidence of theft or conversion exists where there is evidence that a person has concealed property displayed or offered for sale and has removed it beyond a point where payment could be made. *See* IND. CODE 35–43–4–4(c)(1) and (2).

Quantitatively, Sutherlin's testimony alone provided sufficient evidence to support the allegation that Lazarus lacked probable cause to stop and detain her and initiate criminal prosecution for theft of the sweaters and blouse. She denied that while in the dressing room she placed three sweaters or any other merchandise in her shopping bag. Sutherlin unequivocally testified that she had previously purchased three sweaters and brought them back to the store in order to exchange or return them. She also testified that while shop-

ping in the store, she had the blouse draped over her arm or on top of her shopping bag. Finally, Sutherlin testified that she had not exited the store at the time she was apprehended, but rather was shopping in an area where merchandise was exhibited for sale. This testimony was sufficient to fulfill the quantitative requirement.

The second prong of the test, the qualitative analysis, requires a two-step analysis. In the first instance, the question is whether the witness presenting such evidence was credible. Only in cases where the witness's testimony supporting the burdened party's claim stands uncontroverted in the evidence at the time the motion for judgment on the evidence is filed, is a trial court required to determine the credibility of witnesses as a part of its qualitative failure analysis. *Dettman, supra.* The motion is to be sustained if the trial court determines such witnesses are incredible. *Id.*

Sutherlin's testimony supporting the allegation that Lazarus lacked probable cause to believe that she had stolen the sweaters is essentially uncontradicted. The only opposing evidence on this subject was elicited from Stanifer and Jones. Both the Lazarus case report and probable cause affidavit filed by Stanifer recite that Stanifer and Jones observed Sutherlin enter the Lazarus store through the west doors, take sweaters from a rack of clothes, enter a fitting room, place the sweaters in a shopping bag, and exit the store through the north doors. Stanifer and Jones each repeated this version of events at depositions taken on Sutherlin's behalf during the course of this litigation. At trial, however, both Stanifer and Jones admitted that the events recited in the probable cause affidavit and case report were wholly untrue. Rather, they testified that they did not see Sutherlin enter through the west doors, nor did they observe her take sweaters from a rack of clothes, place them in a shopping bag, and exit the store with them. In fact, they admitted that Sutherlin was apprehended inside the store near a rack of clothing. In essence, Stanifer and Jones's evidence corroborated Sutherlin's testimo-

ny supporting her allegation that there did not exist a probable cause to believe that she had stolen the sweaters. Sutherlin's claim being uncontroverted, it was for the trial judge to determine whether the witnesses were incredible. There has been no assertion, however, that Sutherlin was an incredible witness, and we presume that Lazarus would not attack the credibility of its own witnesses. This evidence, therefore, gives rise to a reasonable inference supporting Sutherlin's contention that probable cause did not exist to stop and detain her and institute criminal prosecution against her regarding the sweaters.

Lazarus argues, however, that the undisputed facts also establish that Stanifer and Jones observed Sutherlin remove a blouse from a rack of clothing, place it in her shopping bag, and proceed past the last possible place of sale before apprehending her. Lazarus maintains that these undisputed facts were sufficient as a matter of law to give Stanifer and Jones probable cause to believe that Sutherlin was committing a theft justifying the stop and detention and subsequent prosecution.

Initially, we observe that Sutherlin vigorously disputed at trial that she placed the blouse in her shopping bag. Sutherlin acknowledged that she removed a blouse from a rack of clothing and tried it on in the fitting room. She maintained, however, that she had it draped over her arm or over her shopping bag when she was apprehended while browsing among a rack of clothes near an exit. Sutherlin's testimony that she had not concealed the blouse was in direct conflict with Stanifer and Jones's testimony to the contrary. Thus, the trial court could not determine whether Sutherlin was a credible witness. Instead, it was required to proceed directly to the second step of its qualitative failure analysis.

When the evidence at this stage is viewed in the light most favorable to Sutherlin, it is qualitatively sufficient to establish the absence of probable cause. Conspicuously absent from the narrative set forth in the Lazarus case report and the probable cause affidavit filed on behalf of Stanifer and Jones are any factual allegations regarding the white blouse. In fact, in a deposition taken six months after the incident, Jones continued to assert that she saw Sutherlin roll up a sweater and place it in her shopping bag. It was not until trial that Stanifer and Jones testified that they observed Sutherlin conceal a blouse in the shopping bag. This testimony was offered in conjunction with their admissions that they had misrepresented the facts as related to Sutherlin's alleged activity with the sweaters. Further, Stanifer and Jones testified that Sutherlin was apprehended in a permissible shopping area where customers were encouraged to shop. This evidence, when coupled with Sutherlin's testimony, gives rise to a reasonable inference supporting Sutherlin's contention that Lazarus lacked probable cause to stop and detain and thereafter institute criminal prosecution against Sutherlin for theft of the blouse.

▮ Lazarus also relies on the Johnson County Prosecutor's decision to file criminal charges as a complete defense to Sutherlin's claim for malicious prosecution. It is true that a judicial determination of probable cause in a criminal proceeding may constitute prima facie evidence of probable cause in a subsequent action for malicious prosecution. *See Johnson County Rural Electric Membership Corp., supra.* However, the prima facie case may be rebutted by evidence that shows the finding of probable cause was induced by false testimony or fraud. *K–Mart Corp. v. Brzezinski* (1989), Ind.App., 540 N.E.2d 1276. As previously discussed, both Stanifer and Jones admitted at trial that the information provided the prosecutor and court through the probable cause affidavit and the Lazarus case report was completely false. Although the Johnson County Prosecutor refiled the charge reducing it to two counts of misdemeanor conversion, the amended charging information and probable cause affidavit still recited in part the allegations that Stanifer and Jones admitted were false. Thus, the actions of the Johnson County Prosecutor do not provide Lazarus any form of immunity from Sutherlin's claim for malicious prosecution.

The trial court did not err in denying Lazarus's motion for judgment on the evidence and permitting to go to the jury the issue of probable cause.

## ISSUE II: *Instructions Regarding Probable Cause*

Lazarus contends that the trial court erred in refusing to give to the jury its tendered Instructions No. 3 and 4 regarding probable cause. Tendered Instruction No. 3 read as follows:

> If you find that at the time Mrs. Sutherlin was stopped by Lazarus security that a reasonable person could have concluded that the sweaters in Mrs. Sutherlin's shopping bag probably belonged to Lazarus and probably had not been purchased by Mrs. Sutherlin, such finding would constitute probable cause to stop and detain Mrs. Sutherlin, or
>
> If you find that a reasonable person could have concluded that Mrs. Sutherlin had concealed or was attempting to conceal the blouse, then such evidence would constitute probable cause to stop and detain her, or
>
> If you find that a reasonable person could have concluded that Mrs. Sutherlin was attempting to leave the store at the time she was stopped, such event would constitute probable cause to stop and detain her.

*Record* at 135. Tendered Instruction No. 4 read as follows:

> If you find that at the time charges were filed against Mrs. Sutherlin a reasonable person could have concluded that the sweaters in Mrs. Sutherlin's shopping bag probably belonged to Lazarus and probably had not been purchased by Mrs. Sutherlin, such a finding would constitute probable cause to initiate the prosecution for the theft of the sweaters.
>
> If you find that at the time charges were filed against Mrs. Sutherlin a reasonable person could have concluded that she had concealed or was attempting to conceal the blouse or if you find that a reasonable person could have concluded that Mrs. Sutherlin was attempting to

leave the store, then such evidence would constitute probable

*Record* at 136.

Lazarus argues that where the underlying facts are in dispute, the trial court is required to instruct the jury as to which set of facts, if believed, would or would not establish probable cause. It asserts that the trial court's failure to do so improperly delegated to the jury the function of determining whether probable cause existed as a question of fact when such is a question of law properly determined by the trial court.

■■■ The standard of reviewing a trial court's refusal to give a tendered instruction is well settled. This court considers whether the instruction is a correct statement of the law, whether there is evidence supporting the giving of the instruction, and whether the substance of the instruction is covered by other instructions actually given. *Parke County v. Ropak, Inc.* (1988), Ind.App., 526 N.E.2d 732; *Brokers, Inc. v. White* (1987), Ind.App., 513 N.E.2d 200. Furthermore, it is not error to refuse an instruction which does not fully and accurately state the law and would tend to mislead or confuse the jury. *Public Service Indiana, Inc. v. Nichols* (1986), Ind. App., 494 N.E.2d 349; *Foster v. United Home Imp. Co.* (1981), Ind.App., 428 N.E.2d 1351.

■■■ The trial court properly refused to give Lazarus's tendered instructions for several reasons. The instructions improperly set forth the law regarding the establishment of probable cause. This court defined probable cause in *F.W. Woolworth, supra.* There, we stated that probable cause exists where the facts found on reasonable inquiry would induce a reasonably intelligent and prudent person to believe that the accused had committed the crime charged. In both Instructions No. 3 and 4, however, the word "probably" is improperly inserted before the operative language necessary for the establishment of probable cause. As noted above, the proper inquiry is whether the accused "had" committed the crime charged, not whether the accused had "probably" committed the crime.

Likewise, the inclusion of the term in both tendered instructions deviated from the language and case law interpreting the Shoplifting Detention Act, IND. CODE 35–33–6–1 to 5, upon which Lazarus based its defense. IND. CODE 35–33–6–2(a) provides in pertinent part:

An owner or agent of a store who has probable cause to believe that a theft has occurred or is occurring on or about the store and who has probable cause to believe that a specific person has committed or is committing the theft may:

\* \* \* \* \* \*

In *Crase, supra,* we held that the protections afforded under the Shoplifting Detention Act are not extended unless "there is *probable cause to believe* both that a theft has occurred or is occurring on or about the merchantile establishment and that a specific person has committed or is committing the theft." 176 Ind.App. at 51–52, 374 N.E.2d at 62. Once more, the qualifying phrase "probably" was improperly inserted before the two operative elements necessary to establish probable cause. Thus, the use of a qualifying term in both Instructions No. 3 and 4 was a misstatement of the law or at the very least, would tend to mislead and confuse the jury.

The tendered instructions were also defective in another respect. Tendered Instructions No. 3 and 4 set forth several scenarios upon which probable cause could be premised. Each scenario is independent of the others, allowing probable cause to be established if the jury concludes that the facts of any one scenario are present. The factual scenarios in tendered Instructions No. 3 and 4 are then linked together by the use of the conjunctive word "or". Specifically, paragraph three of tendered Instruction No. 3 would instruct the jury that it is the law in Indiana that there can be probable cause for stopping any person exiting a store, regardless of whether the person exiting the store has in her possession merchandise from the store. This is certainly not the law in Indiana. This defect is also present in tendered Instruction No. 4. Where a requested charge contains several propositions, one or more of which are incorrect, the trial court may refuse the entire request since it must be refused or given as a whole. *State Farm Mutual Auto Insurance Co. v. Shuman* (1977), 175 Ind.App. 186, 370 N.E.2d 941, *trans. denied.*

Moreover, the giving of these instructions was not supported by the evidence. Both Instructions No. 3 and 4 allowed the jury to determine probable cause existed on the basis of the sweaters contained in Sutherlin's shopping bag. The undisputed evidence established, however, that Sutherlin purchased the sweaters from Lazarus during a prior shopping visit. Stanifer and Jones acknowledged that they never observed Sutherlin remove any sweaters from a rack of clothes or attempt to conceal them in any manner in her shopping bag. They admitted further, that any statements they had previously made to the contrary were wholly untrue. Rather, they testified that their sole basis for suspecting Sutherlin of theft involved her conduct with the blouse. Thus, to the extent Instructions No. 3 and 4 permitted the jury to find the existence of probable cause on the basis of the sweaters contained in Sutherlin's shopping bag, they were not supported by the evidence.

Finally, the substance of the refused instructions was covered by other instructions given by the trial court. Instructions No. 3 and 4 instructed the jury about the existence of probable cause. The only point of divergence between the two instructions is the time at which the inquiry into the existence of probable cause occurs. In tendered Instruction No. 3, the inquiry is at the time Sutherlin was stopped in the store, while in tendered Instruction No. 4 the inquiry is at the time the charges were filed. In reviewing Instructions 7, 8, and 12 given by the trial court, it is readily apparent that such adequately covered the theory of Lazarus's case as embodied in tendered Instructions No. 3 and 4.

The trial court's Instruction No. 12 defined the term probable cause for the jury. Further, Instruction No. 12 informed the jury that if it found the existence of probable cause, such finding would constitute a

defense to Sutherlin's claim. The trial court's Instruction No. 8 instructed the jury on the Shoplifting Detention Act. It advised the jury that the Shoplifting Detention Act specifically authorizes the detention of an individual who is believed to be in possession of unpurchased merchandise where the storeowner or its agent has probable cause to believe that a theft has occurred or is occurring. Additionally, the trial court gave an instruction denoted as Defendant's Instruction No. 7 which outlined evidence from which the elements of theft or shoplifting may be presumed. This instruction charged the jury that theft or shoplifting could be presumed where a person conceals property displayed or offered for sale and removes the property within the business premises to a point beyond that at which payment should be made. These instructions fully encompass the fundamental elements of Lazarus's tendered Instructions No. 3 and 4. The trial court did not err in refusing to give Lazarus's tendered instructions on the issue of probable cause.

ISSUE III: *Preliminary Instructions*

Lazarus next argues that the trial court erred in giving the jury Preliminary Instruction No. 3 and refusing to give its tendered preliminary instructions. Instruction No. 3 instructed the jury as to each party's respective burden of proof. It read as follows:

The plaintiffs have the burden of proving by a preponderance of the evidence, the material allegations of their complaint.

When I say that a party has the "burden of proof" on any issue or use the expression, "if you find from a preponderance of the evidence", I mean that you must be convinced from a consideration of all the evidence in the case that the issue which a party has the burden of proving is more probably true than not true.

The defendant has the burden of proving by a preponderance of the evidence its defense of probable cause.

*Record* at 523.

Lazarus takes exception to the last sentence of this instruction because it allegedly misled the jury into believing that Lazarus alone carried the burden of proving the existence of probable cause as to both Sutherlin's claims for false arrest and malicious prosecution. It points out that Lazarus only had the burden of proving that it acted with probable cause as to Sutherlin's false arrest claim, whereas Sutherlin had the burden of proving that no probable cause existed with regard to her malicious prosecution claim. It contends that the trial court was required to further instruct the jury on the elements of malicious prosecution and the statutory elements of a stop and detention as were set forth in its tendered preliminary instruction which the trial court refused to give.

Initially, we note that Preliminary Instruction No. 3 was not an incorrect statement of the law, particularly when read together with the other preliminary instructions given by the trial court. That instruction was given directly after the trial court generally informed the jury as to the material allegations set forth in Sutherlin's complaint and the defense asserted by Lazarus. Specifically, the trial court instructed the jury that Lazarus asserted as a defense that it acted with probable cause in *detaining* Sutherlin. Along these lines, Preliminary Instruction No. 3 correctly stated that Sutherlin had the burden of proving the material allegations contained in her complaint. It also informed the jury that Lazarus bore the burden of proving its affirmative defense of probable cause. It cannot be disputed that the party asserting an affirmative defense bears the burden of proving such. To have instructed the jury regarding Sutherlin's burden of proof as to the allegations raised in her complaint without setting forth Lazarus's burden of proof on its affirmative defense would have been improper.

■ Although we hold that Preliminary Instruction No. 3 was a correct statement of the law, we acknowledge that it may have misled the jury. The confusion arises because probable cause was an integral element of both Sutherlin's claim for malicious prosecution as well as Lazarus's de-

fense to her claim for false arrest. To the extent such instruction misled the jury, however, any confusion was cured when as a part of its final instructions the trial court outlined in detail and at length the essential elements of a claim for malicious prosecution and explained that Sutherlin bore the burden of proving the absence of probable cause in order to prevail on her claim. The trial court's final instructions also advised the jury of the essential elements of a claim for false arrest and the statutory provisions providing the defense of probable cause to such a claim. It specifically instructed the jury that Lazarus only bore the burden of proving the existence of probable cause in order to succeed on its defense as to Sutherlin's claim for false arrest. In fact, the trial court's final instructions covered in total the substance of those preliminary instructions Lazarus previously submitted. The trial court did not err in giving to the jury Preliminary Instruction No. 3 and refusing to give those preliminary instructions submitted by Lazarus.

### ISSUE IV: *Instruction No. 10 Regarding Punitive Damages*

Lazarus also argues that the trial court erred in refusing to give its tendered Instruction No. 10 regarding an award of punitive damages. Tendered Instruction No. 10 read as follows:

Plaintiff is seeking punitive damages based on the alleged malicious and intentional acts of defendant. In order to award punitive damages, you must find by clear and convincing evidence that the defendant's actions were done with malice, fraud, gross negligence, or oppressiveness, and were not merely the result of mistake of fact or law or honest error of judgment, overzealousness, mere negligence or other human failing.

*Record* at 142. Lazarus argues that this instruction was a correct statement of the law and was not covered by any other instructions.

We agree that Lazarus's tendered Instruction No. 10 was a correct statement of the law. *See Bud Wolf Chevrolet, Inc. v.*

*Robertson* (1988), Ind., 519 N.E.2d 135. We disagree that the substance of the instruction was not covered by others given by the trial court, however. Final Instructions No. 15 and 17 contain the trial court's charge to the jury on the issue of punitive damages. Those instructions read as follows:

If you find for the Plaintiff, Patricia Sutherlin, and against the Defendant with respect to any or all of her claims and award her compensatory damages, you must then determine whether or not to award Plaintiff punitive damages against the Defendant.

In order to award punitive damages against the Defendant, the Plaintiff must have proven by a clear and convincing evidence that the Defendant in falsely imprisoning her or maliciously prosecuting her acted with malice, oppression or was guilty of willful and wanton misconduct or gross negligence.

The phrase "clear and convincing evidence" denotes a degree of belief that lies between a preponderance of the evidence and beyond a reasonable doubt which is required to find guilty in criminal prosecutions. The burden of proof by clear and convincing evidence is not a burden of convincing you that the facts which are asserted are certainly true or that they are almost certainly true or are true beyond a reasonable doubt. It is, however, greater than a burden of convincing you that the facts are more probably true than not true.

The burden imposed on Plaintiff to prove her entitlement to punitive damages by clear and convincing evidence is to convince you that the facts asserted are highly probably true or that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. If then you believe upon a consideration and comparison of all the evidence in the case that there is a high degree of probability that such facts are true, you must then find that the fact or facts have been proved by clear and convincing evidence.

If you find from a consideration of all the evidence that the Plaintiff is entitled

to recover punitive damages against the Defendant, then you may award the Plaintiff an additional amount of money, as you may determine in your sound discretion to be appropriate, to punish the Defendant and to deter others from like conduct. You should bear in mind not only the conditions under which the purposes for which the law permits an award of punitive damages to be made but also the requirement of the law that the amount of such punitive damages, if awarded, must be fixed with calm discretion and reasoning and must never be awarded in any amount because of any sympathy, bias or prejudice with respect to any party in the case.

*Record* at 1498. Instruction No. 15 read as follows:

You are instructed that the following terms used in these instructions with regard to the issue of punitive damages have the following meanings:

MALICE: A wrongful act intentionally done without legal justification or excuse with an intent to inflict injury.

OPPRESSION: An act of domination by which one subjects another to a cruel and unjust hardship.

WILLFUL AND WANTON MISCONDUCT: A course of action which shows an actual or deliberate intention to cause injury or which, under existing conditions, shows either an utter difference or conscious disregard for the rights of others.

GROSS NEGLIGENCE: The intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another; such a gross want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness.

*Record* at 1493–94.

Lazarus concedes that the trial court issued Final Instruction No. 17 on the issue of punitive damages, but asserts that such covered only a portion of its tendered instruction. Specifically it claims that Final Instruction No. 17 did not explain that punitive damages cannot be awarded merely based on "the result of mistake of fact or law or honest error of judgment, overzealousness, mere negligence, or other human failing."

This court has repeatedly stated that not all applicable law must be included in a single instruction. *Palmer v. Decker* (1970), 253 Ind. 593, 255 N.E.2d 797; *F.W. Woolworth, supra; Grad v. Cross* (1979), 182 Ind.App. 611, 395 N.E.2d 870. Rather, we look to the instructions as a whole to determine whether the jury was properly instructed. *Id.* A review of the instructions reveals that Final Instructions No. 15 and 17 exhaustively conveyed to the jury the law in Indiana concerning punitive damages. They provided by far a more and complete comprehensive set of instructions on the issue than that set forth in Lazarus's tendered Instruction No. 10. Final Instruction No. 17 provided an expansive discussion of the burden of proof by which Sutherlin had to establish her entitlement to punitive damages. It also described for the jury the circumstances under which an award of punitive damages was appropriate. Final Instruction No. 15 set forth the definition of the several terms utilized in Final Instruction No. 17 to advise the jury as to when punitive damages may be awarded. While the precise words in Lazarus's tendered Instruction No. 10 advising when punitive damages were appropriate were not contained in the trial court's charge to the jury, Final Instructions No. 15 and 17 more than adequately informed the jury that such could not be awarded merely on the basis of negligent or overzealous conduct. The trial court did not err in refusing to give Lazarus's tendered Instruction No. 10.

ISSUE V: *Compensatory Damages*

The jury awarded verdicts for compensatory damages in the sum of $300,036.75 to Patricia, and $7,500 to her husband, Richard. Lazarus asserts that these awards were excessive and not supported by sufficient evidence.

This court recently addressed our strict standard of reviewing appeals predicated upon a claim that an award of damages was excessive. A verdict will

only be reversed when it is apparent from a review of the evidence concerning the injuries that the amount of damages assessed by the jury is so great as to indicate that the jury was motivated by prejudice, passion, partiality, or corruption, or considered some improper element. *Baker v. Champion Motor Home Company, Inc.* (1987), Ind.App., 505 N.E.2d 144. We will not deem the damages to be the result of improper considerations unless the amount of the award cannot be explained on any reasonable ground. *Burris v. Riester* (1987), Ind.App., 506 N.E.2d 484. Further, when reviewing such a claim we will not reweigh the evidence, but will look only to the evidence and the reasonable inferences therefrom which uphold the verdict. *Id.*

 Both Lazarus and Sutherlin acknowledge that the damages awarded Patricia were in respect of the fright, humiliation, embarrassment, and mental anguish she suffered as a result of the false arrest and malicious prosecution. Lazarus concedes that these are proper considerations for a jury determining an award of damages in an action of this nature. *See F.W. Woolworth, supra.* We further observe that a jury is afforded even greater latitude in determining these kinds of damages than that discretion traditionally granted juries in assessing damage awards. In order to support an award for mental anguish, however, there must be evidence that the plaintiff experienced some physical or psychological manifestation of emotional distress. *Groves v. First National Bank of Valparaiso* (1988), Ind.App., 518 N.E.2d 819 (citing *Ramsey v. American Air Filter Co., Inc.* (7th Cir.1985), 772 F.2d 1303 (jury award for mental anguish resulting from racially motivated dismissal reversed as unsupported by the evidence where there was an absence of any evidence that plaintiff was treated for emotional harm or became depressed for any substantial period of time); *Moffett v. Gene B. Glick Company* (M.D.Ind.1985), 621 F.Supp. 244 (award of $50,000 for mental anguish held not excessive where plaintiff demonstrated a variety of adverse psychological and physical manifestations of emotional distress including loss of appetite, sleep disorder, and a

stormy home life); *Dykes v. Peabody Shoreline Geophysical and Transportation Co.* (1985), La.App. 482 So.2d 662 (award for mental anguish reduced where plaintiff failed to introduce any evidence establishing the extent of her mental anguish)).

 In the case at bar, Sutherlin was arrested and incarcerated just two days prior to Christmas. Upon her arrest, Sutherlin was handcuffed and transported to the Greenwood Police Department where she was fingerprinted, photographed, and subjected to a strip search. She was thereafter transferred to the Johnson County Jail where she was again subjected to another strip search. Sutherlin testified that the strip searches to which she was subjected were extremely humiliating and embarrassing. She testified further that following her arrest and incarceration, it was extremely difficult to enjoy life with her family with the prospect of future criminal prosecution, over which she was helpless to exert any control, ahead. She worried continuously during the 11 months criminal charges were pending against her, fearing the loss of her liberty and her children.

Dr. Stephen Stewart, a clinical psychologist, also testified as to the trauma Sutherlin suffered. He explained that as a result of the incident Sutherlin experienced a moderately severe traumatic response. Immediately following the incident, Sutherlin was unable to maintain her daily routine as she had previously. During the several weeks immediately subsequent to her arrest and incarceration, Sutherlin also displayed physical manifestations of her trauma. Stewart described that Sutherlin experienced sleep disturbances, disruption of routine, isolation from usual social functions, and increased feelings of mistrust. Stewart indicated that Sutherlin's humiliation and feelings of powerlessness were exacerbated by the fact that she was subjected to not one but two strip searches. In concluding, Stewart observed that as of the date of trial, Sutherlin was still recovering from the psychologically debilitating condition caused by her arrest, strip search, incarceration, and prosecution.

In light of the evidence of her physical and psychological manifestation of mental anguish, we cannot conclude that the $300,036.75 award to Sutherlin was so high as to demonstrate passion or prejudice on the part of the jury. The award of damages to Sutherlin was supported by sufficient evidence.

There were also reasonable grounds for upholding the award of compensatory damages to Richard. Richard testified that as a result of her arrest, Patricia became withdrawn from him and the family. He had to begin taking over duties which she had previously done in her normal daily routine. Although they celebrated Christmas for the sake of their children, the holidays were a somber occasion. Patricia also became incapable of helping keep books and perform many other duties for the family business as she had previously. Richard explained that the entire experience, from the point of her arrest through criminal prosecution, was unnerving. This testimony is sufficient to support the amount of compensatory damages awarded Richard.

ISSUE VI: *Evidence of Punitive Damages*

Lazarus contends that there did not exist clear and convincing evidence of malice or willful or wanton behavior on its part to justify submission of the issue of punitive damages to the jury.

Indiana's standard for punitive damage awards places a heavy burden on the plaintiff. To justify an award of punitive damages, there must be clear and convincing evidence which overcomes the presumption that the defendant's conduct was merely negligent or the result of some honest error. *A.B.C. Home and Real Estate Inspec., Inc. v. Plummer* (1986), Ind. App., 500 N.E.2d 1257. Rather, punitive damages are recoverable only upon clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppression which was not the result of mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other human failing. *Bud Wolf*

*Chevrolet, Inc., supra; Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349. Clear and convincing evidence is defined as an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt. It requires the existence of a fact to be highly probable. *Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019. The defendant is cloaked with rebuttable presumption that his actions, though perhaps tortious, were nevertheless noniniquitous human failings. *Id.*

Punitive damages are not compensatory in nature but are designed to penalize or punish the wrongdoer and dissuade him and others from similar conduct in the future. *Carroll v. Statesman Insurance Co.* (1987), Ind., 509 N.E.2d 825. They are awarded in addition to the compensatory awards for a financial loss, pain, suffering, and other considerations. *Orkin, supra.* Thus, the sole issue when considering punitive damages is whether or not the defendant's conduct was so obdurate that he should be punished for the benefit of the general public. *Id.*

The punitive damages awarded in the case at bar were supported by clear and convincing evidence. Malice may be inferred from the institution of criminal prosecution without probable cause. *See F.W. Woolworth Co., supra.* As indicated above, there was a wealth of evidence demonstrating that probable cause did not exist to stop and detain Sutherlin or justify the institution of criminal prosecution against her. Sutherlin entered the Lazarus door with previously purchased sweaters in her shopping bag in order to exchange or return them. She never removed them during that visit from a rack of clothes or attempt to conceal them in her shopping bag while in the dressing room. Significantly, Stanifer and Jones admitted at trial that the recitation of events set forth in the Lazarus case report and probable cause affidavit as regarding Sutherlin's alleged conduct with the sweaters was wholly untrue. Rather, they admitted that they did not observe Sutherlin conceal any sweaters or attempt to leave the store with them.

Sutherlin testified that she left the fitting room with the blouse draped over her arm and was apprehended while browsing among a rack of clothes. She proceeded beyond the register at which she was informed to charge additional purchases because it was closed. Stanifer and Jones acknowledged that they apprehended Sutherlin in an area where customers were encouraged to shop and that Sutherlin was not attempting to leave the store. Furthermore, the evidence demonstrated that immediately prior to Sutherlin's apprehension, Stanifer and Jones had met with Lazarus's corporate manager of security at approximately 1:00 p.m. that afternoon. Stanifer testified that she and Jones wanted to effectuate an arrest while he was present. As they left the 1:00 p.m. meeting, Jones told Stanifer, "Let's get something going" and "stir something up." *Record* at 776, 832–33. Sutherlin's arrest followed shortly thereafter at approximately 1:30 p.m. Sutherlin met her burden of proving, by clear and convincing evidence, that Lazarus acted with malice, fraud, gross negligence, or oppression which was not the result of honest error of judgement, or overzealousness, or mere negligence. Punitive damages were properly imposed.

ISSUE VII: *Excessiveness of Punitive Damages*

Notwithstanding our determination that there existed clear and convincing evidence supporting the imposition of an award of punitive damages, Lazarus argues that the $1,000,000 awarded here were excessive. Lazarus contends that the magnitude of the punitive damage award is in no way consistent with the nature of its conduct in the case at bar.

We cannot agree with Lazarus's contention, particularly in light of the clear and convincing evidence indicating that it acted without probable cause. Stanifer and Jones admitted that they misrepresented the facts which they initially recited as giving rise to their suspicion of Sutherlin. This evidence and the other testimony outlined above more than adequately supports the $1,000,000 punitive damage award rendered in favor of Sutherlin.

Lazarus also points out, however, that $150,000 is the highest punitive damage award affirmed on appeal, and when viewed in this context, the $1,000,000 award here is outrageous. In the case at bar, the punitive damage award is approximately 3.4 times larger than the compensatory damage award. While there is no rule in Indiana requiring that the amount of punitive damages must be within a certain ratio to the compensatory damages, this factor is evidence of the reasonableness of a punitive damage award.[1] *See Bud Wolf Chevrolet, Inc., supra.* In *Bud Wolf,* this court affirmed an award of punitive damages that was more than 20 times greater than the compensatory damages awarded. Moreover, the United States Supreme Court recently upheld substantial punitive damage awards against corporations where the compensatory damages were far less than those awarded in the case at bar. In *Browning–Ferris Industries of Vermont, Inc. v. Kleco Disposal, Inc.* (1989), — U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219, the Supreme Court upheld a $6,000,000 punitive damage award based upon a compensatory damage award of $51,146. Similarly, in *Bankers Life and Casualty Co. v. Crenshaw* (1988), 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62, the Court upheld an award of $20,000 in compensatory damages and $1,600,000 in punitive damages. In light of this precedent and given the nature of Lazarus's conduct, we cannot conclude that the punitive damages awarded by the jury were excessive.

ISSUE VIII: *Constitutionality of Punitive Damages*

In the alternative, Lazarus argues that the imposition of punitive damages in the amount of $1,000,000 violates both the eighth amendment to the United States Constitution and article I, § 16 of the Indiana Constitution prohibiting excessive

---

1. We observe that the Indiana legislature has authorized the award of treble damages. *See* IND. CODE 34–4–20–1.

fines.[2] Specifically, Lazarus contends that the award of punitive damages violates the principle of proportionality underlying the eighth amendment.

We observe that the United States Supreme Court recently rejected the eighth amendment argument. In *Browning-Ferris, supra,* the Supreme Court held that punitive damages awarded in civil cases do not violate the excessive fines clause of the eighth amendment. In response to the defendant's argument that the $6,000,000 punitive damage award was disproportionate to the jury's compensatory damage award, the Supreme Court stated:

We face here the questions whether the Excessive Fines Clause of the Eighth Amendment applies to a civil-jury award of punitive or exemplary damages, and, if so, whether an award of $6,000,000 was excessive in this particular case. This Court has never held, or even intimated, that the Eighth Amendment serves as a check on the power of the jury to award damages in a civil case. Rather, our concerns in applying the Eighth Amendment have been with criminal process, and with a direct action initiated by government to inflict punishment.

*Id.* at ——, 109 S.Ct. at 2912 (footnote omitted). The Supreme Court concluded holding:

Awards of punitive damages do not implicate these concerns. We therefore hold, on the basis of the history and purpose of the Eighth Amendment, that its Excessive Fines Clause does not apply to the awards of punitive damages between private parties.

*Id.*

▆ Lazarus acknowledges this holding, but argues that such is not determinative of the question whether the punitive damages awarded violates the Indiana Constitution. Although this court invites arguments distinguishing the applicability of similar federal and state constitutional provisions, Lazarus presents to us nothing more than the bald assertion that "nothing prevents the state from providing more protection than the federal constitution. *Reply Brief* at 28.[3] Nevertheless, we find the reasoning advanced in *Browning-Ferris, supra,* persuasive and hold that an award of punitive damages in a civil case does not implicate the excessive fine provision of the Indiana Constitution.

▆ Lazarus also contends that the punitive damage award violates the due process clause of the fourteenth amendment of the United States Constitution and article I, § 12 of the Indiana Constitution.

Lazarus's argument regarding the fourteenth amendment, to the extent understood, cannot be embraced. Lazarus develops no argument explaining how the award of punitive damages here denied any rights extended to them under the fourteenth amendment. It only baldly asserts that the proceedings below were fundamentally unfair as demonstrated by the trial court's refusal to give its Preliminary Instructions and tendered Instructions No. 3, 4, and 10. As held above, however, the trial court committed no error in refusing to give these instructions. More importantly, punitive damages have long been recognized as comporting with the Fundamental Fairness Doctrine of the due process clause. *Missouri Pacific and R. Co. v. Humes* (1885), 115 U.S. 512, 6 S.Ct. 110, 29 L.Ed. 463. It is true, as Lazarus points out, that Justice O'Connor recently commented in a recent opinion about punitive damages and due process protections. *See Bankers Life, supra.* However, the Supreme Court in that case and in a subsequent decision explicitly refused to consider the question. *See Browning-Ferris supra.* Thus, we cannot conclude that the punitive damage award

---

**2.** Art. 1 § 16 provides: "Excessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense."

**3.** Thus, Lazarus has waived consideration of this issue for failing to present cogent argument or citation to any pertinent authority as required by Ind. Rules of Procedure, Appellant Rule 8.3(A)(7). *Willsey v. Peoples Fed. Sav. & Loan* (1988), Ind.App., 529 N.E.2d 1199, *trans. denied.*

here violated the fourteenth amendment of the United States Constitution.

In its reply brief Lazarus also asserts that article I, § 12 of the Indiana Constitution provides for due process of law.[4] Lazarus, however, develops no further argument whatsoever regarding this contention. We note parenthetically that although traditionally thought of as a simple due process provision, § 12 in fact provides greater protection guaranteeing that all courts shall be open and that every person shall have a remedy. *See Shepard, Second Wind for the Indiana Bill of Rights,* 22 Ind.L.Rev. 575, 581–82 (1989); *State ex rel. Board of County Commissioners v. Laramore* (1911), 175 Ind. 478, 94 N.E. 761. In any event, Lazarus makes no indication how it has been denied any rights extended under this provision.

Accordingly, for the above reasons, the judgment of the trial court is affirmed.

ROBERTSON and STATON, JJ., concur.

---

**4.** Art. 1 § 12 provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.