Deeanna **BREWER**, Plaintiff–Appellee,

v.

**WAL-MART STORES, INCORPORATED,**
Defendant–Appellant.

No. 95–3392.

United States Court of Appeals,
Seventh Circuit.

Argued March 21, 1996.

Decided June 21, 1996.

W. Scott Montross (argued), Townsend, Hovde & Montross, Indianapolis, IN, for plaintiff–appellee.

Thomas L. Davis, Robert W. Wright (argued), Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for defendant–appellant.

Before HARLINGTON WOOD, Jr., KANNE, and DIANE P. WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This case illustrates the problems a lost or stolen wallet can cause. With that wallet and $10, an unknown woman used plaintiff Deeanna Brewer's name and identification to open a token checking account at a credit union. Forty bad checks later many merchants had inundated the plaintiff with demands for payment. The forger was never located, leaving the plaintiff—who had never had a checking account—with the problems.

One of the merchants involved was Sam's Club, a subsidiary of defendant Wal–Mart.

The unknown forger, using plaintiff's temporary Sam's Club card, gave that store a check for $182.25 drawn on the bogus account. Because of Wal–Mart's efforts to collect that bad check from the plaintiff—which included the bringing of criminal charges-plaintiff filed a malicious prosecution suit. First filed in an Indiana state court, the case was later removed to federal court by Wal–Mart on diversity grounds. After a two-day trial, the jury found for the plaintiff and awarded her $40,000 in compensatory damages and $35,000 in punitive damages, a total of $75,000. Wal–Mart challenges only the punitive damages award.

## BACKGROUND

In April 1992 plaintiff discovered her billfold was missing. It contained among other things her drivers license, social security card, birth certificate, various credit cards, and a temporary (without photo) Sam's Club card entitling her to shop at that store. To protect herself the plaintiff canceled her credit cards and obtained a new driver's license. Her troubles were not over, however. In October 1992 an impostor gave Sam's Club a bad check that correctly listed plaintiff's name, address, and social security number.

When the insufficient funds check was returned to Sam's Club, it advised plaintiff of the deficiency by certified mail. Plaintiff claimed she did not receive that notice, but did receive similar notices from other victimized stores. Plaintiff responded to the other notices and also went to the credit union to explain how her identification had been misused. With the help of a handwriting sample, she finally persuaded a credit union officer that she was not the one who had opened the account or passed the bad checks. The credit union decided to write off the loss, but the computer-generated collection letters from the credit union and other merchants continued to arrive. Plaintiff then notified the police department and explained the situation to a detective. That detective talked to the credit union, but otherwise conducted

little or no investigation. No culprit was ever identified.

Plaintiff testified that because she continued to receive collection letters and was threatened with prosecution by various merchants, she contacted the detective several more times. He advised her to explain the situation to the stores and to give them the police case number. In the meantime Wal–Mart, after receiving no response to its certified letter, submitted a probable cause affidavit to the local prosecutor pursuant to Indiana's check deception statute, Ind.Code Ann. § 35C5–5 (West 1986). That prompted a letter from the prosecutor to plaintiff in December 1992, advising her that a complaint had been filed by Wal–Mart and that plaintiff should make the check good or satisfactorily explain the facts to Wal–Mart.

Plaintiff and her mother then met with the manager of Wal–Mart. They examined the controversial check and denied the check was in plaintiff's handwriting. They also gave Wal–Mart's manager the police case number and the detective's name and phone number. It was claimed that Wal–Mart's policy was to require a copy of the actual police report before the charges would be dropped. The manager did not testify that he told plaintiff the report was necessary, but in her deposition plaintiff admitted that Wal–Mart required the police report. At trial she testified further that the police report or the case number was necessary. The manager had called the detective and asked for a copy of the police report, but did not explain that it was needed before charges could be dropped.

A check investigator for the prosecutor's office testified that check deception is a prevalent problem. A credit union witness also testified it was a common problem in that institution's experience, and that it was likewise common for a person to falsely claim that they had not written the bad check being questioned. Since Wal–Mart allegedly received no police report in spite of requests to the plaintiff and to the detective, the prosecutor was instructed by Wal–Mart to proceed with the check charge. Plaintiff subsequently received a notice to appear in court in April 1993 for a hearing. Plaintiff called the detective, who in turn contacted Wal–Mart. Thereafter the detective mailed a copy of the actual police report to the store, and advised Wal–Mart that it was making a mistake.

Plaintiff contacted an attorney to represent her when she received the summons (not a warrant) to appear on the check charge. The attorney advised her to appear alone at that initial hearing. She did so, and was subjected to the usual appearance procedures: she was read her rights, after which she entered a plea of not guilty, and was then fingerprinted and photographed. Later at a pretrial conference in May plaintiff's attorney did appear and succeeded in having the charge against plaintiff dismissed. Nevertheless, plaintiff continued to receive collection letters from other merchants.

In July 1993 plaintiff filed a one-count complaint against Wal–Mart alleging that Wal–Mart had been negligent and had maliciously prosecuted her without probable cause. She sought compensatory damages to cover her attorney's fees of $400, and $63 to cover a day's wages lost for attending the initial hearing. She also asked for compensation for her resulting emotional suffering. The complaint also requested punitive damages for the defendant's "outrageous" conduct.

In October 1993, following the filing of the complaint and its removal, the parties filed their Case Management Plan which again set forth plaintiff's contention that "Wal–Mart was negligent and maliciously prosecuted her without probable cause." Wal–Mart denied the charges. Punitive damages were not mentioned in that Plan.

Next, in December 1993 plaintiff filed her Contentions and Statement of Special Damages. In this pleading plaintiff once again contended that Wal–Mart "was negligent and maliciously prosecuted her without probable cause." She further alleged that as a result plaintiff had incurred legal expense for her defense of the criminal charges filed by the defendant and had been further damaged in that she suffered extreme embarrassment, humiliation, and mental anguish as a result of "defendant's negligence." Plaintiff's final contention was that "[t]he negligence of the

defendant was a proximate cause of plaintiff's damages." The pleading concluded with an allegation of special damages consisting of her $400 legal expenses and damages associated with the embarrassment, humiliation, and mental anguish suffered by plaintiff in the amount of $100,000. No mention was made of punitive damages, only compensatory damages resulting from negligence.

In January 1995 a Pretrial Preparation Order was entered which provided deadlines to file voir dire questions and proposed jury instructions. In the tendered voir dire questions only defendant Wal–Mart mentioned punitive damages, in response to plaintiff's original allegation of punitive damages in her complaint. Plaintiff, however, tendered no instruction on punitive damages. In one of defendant's two proposed instructions the defendant, not the plaintiff, mentioned that for punitive damages the evidence must be clear and convincing. However, neither the possibility of punitive damages nor the higher burden of proof required for such an award were mentioned by the judge when she gave the jury a preliminary idea about the facts and law involved in the case. The judge did mention that Wal–Mart was alleged by plaintiff to have maliciously prosecuted her without probable cause, and that the plaintiff sought damages against Wal–Mart for that reason. Later the judge again characterized the case as one of "malicious prosecution." The judge further explained that plaintiff's burden of proof in this civil case, unlike a criminal case, was "by a preponderance of the evidence." No mention was made of the burden of proof for punitive damages. Subsequently the judge explained to the prospective jurors that the damages sought by plaintiff were allegedly of an emotional nature, including embarrassment, fear, anxiety, mental suffering, and anguish. Nothing was mentioned about punitive damages.

When plaintiff's attorney was permitted to directly voir dire the jury, he stated that it was plaintiff's burden to prove, by "a preponderance of the evidence," that Wal–Mart had wrongfully prosecuted the plaintiff. The jury was also advised by plaintiff's counsel that it was plaintiff's burden to prove to the jury "that it is more probably true than not,

tip the scales of justice, that Sam's Club was wrong in initiating this prosecution." The voir dire examination, conducted by the judge and both counsel, was very extensive considering that this case began on August 29, 1995 and the jury returned its verdict the following day. Yet during the entire voir dire no one mentioned punitive damages or the applicable burden of proof for that type of damage.

After the jury was sworn and seated the court delivered its preliminary instructions. The jury was advised that plaintiff claimed she had been maliciously prosecuted without probable cause and sought damages for that reason. The jury was also instructed that plaintiff would have to prove her case by "a preponderance of the evidence." No mention was made by the court of punitive damages or the different applicable burden of proof.

Next followed the opening statement of plaintiff's counsel. He told the jury that to have his client arrested there had to be probable cause; this meant, he said, that it was "reasonable" for Wal–Mart to believe plaintiff wrote the bad check. Counsel then mentioned that "malicious prosecution" could be inferred from a lack of probable cause. He summed up by saying it was a question of probable cause and the jury must therefore determine if Wal–Mart had acted "reasonably." Again, punitive damages and the different and relevant standard of proof were not mentioned. The attorney for Wal–Mart then responded and endeavored to explain Wal–Mart's actions and denied any wrongdoing. No mention was made of punitive damages by defendant's counsel. Similarly, during the following presentation of the evidence, whether on direct or in cross-examination, no suggestion was made about punitive damages.

When both parties had rested Wal–Mart withdrew its previously tendered instructions on punitive damages. As Wal–Mart saw it, punitive damages were no longer a part of plaintiff's case. With that, plaintiff's counsel promptly produced instructions on punitive damages. The judge overruled Wal–Mart's objection to the introduction of these last-minute punitive damage instructions, explaining to counsel that "I think I have to grant

leave to file the tendered instructions under the rule." Wal–Mart argued it would be prejudiced, pointing out that plaintiff had not mentioned punitive damages during the entire course of the trial or shown any intent to pursue punitive damages. The court also noted, however, that plaintiff had not mentioned punitive damages, but added that the omission had not barred Wal–Mart itself from "proceeding to ask questions on punitive damages." The court additionally explained that the rules "mandate" that she grant leave to plaintiff to tender the punitive damage instructions. The jury was then instructed on punitive damages.

## ANALYSIS

■■■ Wal-Mart argues that in allowing the punitive damage issue to be put before the jury by the instruction at the last minute, the district court abused its discretion. This suggestion correctly identifies our standard of review. *Gorlikowski v. Tolbert,* 52 F.3d 1439, 1444 (7th Cir.1995). Considering the language the court used in answering Wal–Mart's objection, quoted above, it is difficult to see that *any* judicial discretion was exercised. Indeed, the court seemed to believe that the instruction had to be given; it was "mandated." Yet we know of nothing in the particular circumstances of this case that directed the court to introduce the punitive damage issue after the evidence was closed and without the issue being tried before the jury. If, however, discretion was exercised, it was clearly abused in these particular trial circumstances.

After filing its complaint, plaintiff avoided any mention of punitive damages in the Case Management Plan, the Plaintiff's Contentions and Statement of Special Damages, the Pretrial Preparation Order, her tendered voir dire jury questions, and during direct and cross-examination of all witnesses. Plaintiff first raised the punitive damage issue after the close of evidence.

Anticipating questions arising from the total absence of the punitive damage issue during the trial of the case before the jury, plaintiff's brief on appeal gives an unacceptable interpretation of plaintiff's trial actions. Plaintiff explains that malice is a core compo-

nent of punitive damages, and that she did assert "malice" in the proceedings. Plaintiff has neglected to point out, however, that her Contentions and Statement of Special Damages claims only that Wal–Mart was negligent and maliciously prosecuted plaintiff without probable cause. It concludes by claiming that the negligence of defendant was the proximate cause of her damages. Thus it is not merely the omission of any mention to the jury about punitive damages, both here and elsewhere in the trial, but also affirmative statements made by plaintiff's counsel to the effect that it was Wal–Mart's *negligence* which caused the plaintiff's damages.

"[P]roof that a tort was committed is not sufficient to establish the right to punitive damages.... Punitive damages may be awarded only if there is clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, other human failing....'" *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 520 (Ind.1993) (quoting *Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 137–38 (Ind.1988)). It follows from this standard that the mere absence of probable cause, resulting from negligence, is not enough to give rise to punitive damages. In *Lazarus Dep't Store v. Sutherlin,* 544 N.E.2d 513, 527 (Ind.Ct.App.1989), a shoplifting case, it was held that malice could be inferred from criminal prosecution without probable cause. That holding, however, was based on clear evidence of malicious intent; the store's security guards admitted the facts set forth in the probable cause affidavit filed by the store were in fact "wholly untrue." Beyond this, the court also noted that a "wealth of evidence" demonstrated that probable cause did not exist to stop and detain the accused, nor to justify the institution of criminal prosecution against her. *Id.*

The Supreme Court of Indiana, in *Budget Car Sales v. Stott,* 662 N.E.2d 638 (Ind.1996), recently published an order setting forth the correct standard for review of punitive damage awards. That standard is substantially the same as set forth in *Erie Ins. Co. v.*

*Hickman, supra.* Although we need not reach the merits of the punitive damage award in this case, as our holding turns on another issue, the evidence plainly does not offer "clear and convincing" proof of a malicious state of mind, as required by the Indiana Supreme Court. There *was* sufficient evidence from which a reasonable jury could find that Wal–Mart was negligent, even "overzealous," in the way it handled this particular case. Such a finding, however, is not enough to support an award of punitive damages under Indiana law.

In its final instructions the court, for the first time, tried to make up for the separate issues and burdens then being introduced to the jury by stating that malice includes an element of intent to inflict injury, or to be so reckless with regard to others that it shows wilfulness and wantonness. It is possible that, even as a whole, the court's instructions could have caused some confusion by introducing punitive damages to the jury only at the last moment. In some instructions the judge labelled plaintiff's case as one of malicious prosecution which the plaintiff needed to prove by a preponderance of the evidence. Another instruction defines a malicious act as one wrongfully done without just cause or excuse or without a reasonable investigation. Another states that "maliciousness" can be inferred from lack of probable cause. Yet another equates reasonableness with probable cause.

In additional instructions, however, the jury was first informed about punitive damages which, the court explained, could be added on to punish Wal–Mart. Intent to cause harm to plaintiff was then mentioned in these later instructions as an element of punitive damages. Thus the jury was expected to understand "malicious" to have two different meanings for two different purposes. Had the separate issues been dealt with explicitly during the trial the jury possibly could have sorted the instructions and issues out. In this case, however, it cannot be said with certainty that the jury was not confused by these late and very significant changes. The sequence of things might even suggest to the jury the possibility that it was the judge who, after hearing the evidence, had added the punitive damages issue with the implication that punitive damages were justified.

Apart from the pleadings and the instructions, there is a more significant problem in the way the case was tried by plaintiff's counsel. Plaintiff's brief on appeal offers an explanation. Plaintiff's counsel explains that he elected to try the punitive damages issue "softly": "to mention, but not stress in voir dire and opening statement, to let the evidence lead to the inescapable conclusion that punitive damages were appropriate." In our view, plaintiff tried the issue so "softly" that no one could possibly have heard or understood it, particularly the jury which did not hear anything about punitive damages until after the evidence was closed. Plaintiff claims, however, to have actually "mentioned" punitive damages to the jury. We cannot find that "mention" in the record. In a footnote, however, "mention" is defined to mean that plaintiff's counsel "alluded" to punitive damages by questioning on voir dire if the venire could follow the law given to them as it related to any award of damages which might be appropriate. Plaintiff's counsel also argues that he referred to "any awards" during voir dire, obviously meaning, as he sees it, punitive as well as compensatory damages. It is likewise argued that in plaintiff's opening statement Wal–Mart's conduct was described as "outrageous" and that the jury could award damages for that conduct. Thus, it is concluded by plaintiff's counsel that punitive damages were clearly in the trial of the case. We reject plaintiff counsel's very strained interpretation, to say the least, of the trial record.

Plaintiff next argues that in any event punitive damages were tried with defendant's implied consent and thereby amended the pleadings. Those unworthy arguments are too obscure to be realistic. If there was any implication to be drawn from the very "soft" way plaintiff's counsel tried this case, it would more realistically be that plaintiff, for her own reasons, decided not to pursue punitive damages and impliedly withdrew the punitive issue from the jury. That was the reasonable reaction of Wal–Mart.

This "soft" trial technique can more realistically be viewed as prejudicing Wal–Mart in numerous respects in all phases of the trial, from its opening to its closing, including particularly the witnesses called and their examinations. Punitive damages were alleged and then by plaintiff's conduct abandoned, withdrawn, or waived. After the harm had been done to the defendant before the jury it could not be patched up by some last minute instructions on punitive damages mixed in with the other instructions. Instructions can, of course, be added in the judge's discretion, but not under circumstances as here where a party is obviously prejudiced. Nor can it be realistically and seriously argued that it was up to Wal–Mart to open up the matter of punitive damages before the jury as was suggested by the judge. The plaintiff was the one allegedly seeking punitive damages, not the defendant; plaintiff had the burden of proof, not Wal–Mart. A trial lawyer defending in these circumstances could not be expected to be the one to voluntarily open up a matter, ignored by plaintiff, which could only be detrimental to the defendant.

This so-called "soft" way of dealing with the issue of punitive damages in these particular circumstances cannot be condoned whatever its motivation, whether it was to mislead Wal–Mart in its own defense or whether it was some calculated way to approach the jury. Whatever the reason, plaintiff's counsel concedes that it was intentional. The jury could easily have been confused about punitive damages, and Wal–Mart was therefore prejudiced.

Trial strategy and tactics are important considerations for any good trial lawyer, as plaintiff's counsel appears to be. However, in the particular circumstances of this case, the approach intentionally adopted is too long on strategy and tactics and too short on fairness. The case was tried too "softly" by the plaintiff to avoid being prejudicial to defendant Wal–Mart.

For these reasons the award of punitive damages is reversed, and that part of the case is remanded to the district court with instructions to vacate the punitive damage award. The award of compensatory damages is affirmed.

The parties shall bear their own costs in this court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.