STATE of Wisconsin EX REL. Nathaniel A. LINDELL,
Petitioner-Appellant,

v.

Jon E. LITSCHER, S. M. Puckett and Gary R. Mc-
Caughtry, Respondents-Respondents.

Court of Appeals

*No. 02–1389. Submitted on briefs October 11, 2002.—Decided
January 30, 2003.*

2003 WI App 36

(Also reported in 659 N.W.2d 413.)

![redacted]

On behalf of the petitioner-appellant, the cause was submitted on the motion of *Nathaniel A. Lindell*, pro se.

On behalf of the respondents-respondents, the cause was submitted on the response of *John J. Glinski*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Dykman, Roggensack and Deininger, JJ.

¶ 1. PER CURIAM. Nathaniel Lindell moves for reconsideration of this court's form order dated June 14, 2002, which required Lindell to prepay part of the filing fee and directed the agency having control of Lindell's trust fund account to freeze the account until it has sufficient funds to pay the outstanding balance on Lindell's filing fee. Lindell contends that the order, and WIS. STAT. § 814.29(1m) (1999–2000),[1] on which the order is based, violate his rights to court access, religious freedom, freedom of association, the necessary comforts of life, and equal protection. Because the validity of orders freezing prisoner trust account statements is a recurring issue, we asked the respondents to address Lindell's claims, and allowed Lindell to reply.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

Having considered the arguments presented, we are persuaded that § 814.29(1m) survives constitutional scrutiny.

## Access to Courts

¶ 2. Lindell claims that freezing the trust accounts of indigent prisoners until they have paid their filing fees denies access to the courts for potentially meritorious claims by requiring inmates to chose between daily necessities and legal rights. As we have previously explained:

> The First Amendment protects the rights of citizens to "petition the Government for a redress of grievances." U.S. CONST. amend. I. Our state constitution similarly guarantees the right "to petition the government." WIS. CONST. art. I, § 4. In conjunction with due process requirements, the right to petition for redress of grievances requires that people, including prison inmates, be given meaningful access to the courts to pursue civil claims. *See, e.g., Crowder v. Lash,* 687 F.2d 966, 1004 n.6 (7th Cir. 1982) (citing the First and Fourteenth Amendments as the basis for a prisoner's federal right of access to courts). Article I, § 9 of the Wisconsin Constitution additionally provides:
>
> > Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property or character; he ought to obtain justice freely, and without being obligated to purchase it, completely and without denial, promptly and without delay, conformably to the laws.
>
> The right to have access to courts "is neither absolute nor unconditional," however. *Village of Tigerton v. Minniecheske,* 211 Wis. 2d 777, 785, 565 N.W.2d 586 (Ct. App. 1997). For instance, the right may be limited on a case-by-case basis in response to a pattern

459

of frivolous litigation. *See id.* Furthermore, the right is not violated by requiring a civil litigant to pay a filing fee, unless the litigant's inability to pay the fee would prevent him from advancing a matter in which some constitutionally recognized fundamental interest is implicated. *See United States v. Kras*, 409 U.S. 434 (1973) (reversing waiver of prepayment of filing fee in bankruptcy action); *Ortwein v. Schwab*, 410 U.S. 656 (1973) (approving refusal to waive filing fee for action to challenge reduction of welfare benefits); *cf. M.L.B. v. S.L.J.*, 519 U.S. 102 (1996) (holding that a state may not condition appeals from the termination of a person's parental rights on the ability to pay record preparation fees); *Boddie v. Connecticut*, 401 U.S. 371 (1971) (mandating the waiver of filing fees for indigent persons seeking divorce). A litigant's right to initiate *in forma pauperis,* that is, without the prepayment of fees, in any civil matter which does not implicate a fundamental right, stems from a legislatively created privilege, not a constitutionally guaranteed right.

*State ex rel. Khan v. Sullivan*, 2000 WI App 109, ¶¶ 5–6, 235 Wis. 2d 260, 613 N.W.2d 203 (footnote omitted).

¶ 3. The statutory scheme surrounding WIS. STAT. §§ 801.02(7)(d) and 814.29(1m)(c) takes into account an indigent inmate's right to advance litigation in support of a fundamental right by excluding from the definition of those "prisoners" to whom the provisions apply any inmate who is seeking relief from, among other things, a sexually violent person commitment, a judgment terminating parental rights, a judgment of conviction or sentence of a court, or a mental commitment. *See* WIS. STAT. § 801.02(7)(a)2. Section 801.02(7)(d) also permits an indigent prisoner to file suit without the prepayment of the filing fee, even if he has filed three or

more frivolous suits in the past, if he "is in imminent danger of serious physical injury." Therefore, Lindell cannot successfully advance a facial challenge to the statute on the grounds that it bars all indigent inmates the right to vindicate their fundamental rights.

¶ 4. Nor can Lindell successfully advance an as-applied challenge on the issue of access to the courts, because he has not alleged that he has any fundamental interest at stake in the present litigation, and we do not see any such interest present in his attempt to obtain certain prison documents by mandamus.[2] We conclude the legislature's decision not to extend to prisoners the privilege of proceeding without the prepayment of fees in routine civil cases does not violate the constitutional right to court access. Lindell's ability to proceed by having deductions for the filing fee made from his prison account provides him meaningful access to the courts.

*Freedom of Religion, Freedom of Association, and Necessary Comforts of Life*

¶ 5. In related arguments, Lindell claims that freezing his trust fund account prevents him from buying paper, envelopes, postage stamps, deodorant, chapstick, lotion, soap, shampoo, religious publications and ceremonial supplies, thus burdening his constitutional rights to practice his religion, associate with his family, and enjoy the necessary comforts of life. His contentions are flawed in multiple respects.

---

[2] We do not decide what result would be proper for an as-applied challenge by an inmate seeking to litigate a fundamental right not specifically excluded from the definition of a prisoner.

¶ 6. First, with regard to religious freedom, we note that Lindell is not complaining that he is being barred from taking action which he believes to be religiously compelled or compelled to take action which he believes to be religiously prohibited. Rather, he is complaining that he lacks the funds to buy certain items of religious significance to him. The constitutional protection of a certain right against unwarranted government interference does not create an entitlement to a subsidy, however. *See Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002) (noting, among other things, that the right to have an abortion does not require the government pay for medical costs and the right to petition for redress of grievances does not require the government to provide paper and stamps). If the government has no obligation to directly provide the religious publications which Lindell cites, it has no obligation to indirectly subsidize his ability to purchase them by paying other costs Lindell would otherwise incur. Quite simply, Lindell's inability to purchase these items is the direct result of his own decision to litigate. *See Spence v. Cooke*, 222 Wis. 2d 530, 538, 587 N.W.2d 904 (Ct. App. 1998).

¶ 7. The same analysis applies to Lindell's ability to communicate with his family. The prison has no obligation to buy Lindell paper and pens so that he may write to his family. It is Lindell's choice to use his limited funds to finance correspondence with the courts rather than his family.

¶ 8. With regard to the personal hygiene items, Lindell notes that article I, § 17 of the Wisconsin Constitution exempts a reasonable amount of property for payment of a debtor's obligations in order to allow

the debtor to enjoy "the necessary comforts of life." Imprisonment following a valid conviction, however, properly restricts an individual's liberty and other privileges. *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). Therefore, the standard of living contemplated by the debtor provisions does not necessarily apply in the prison context. Rather, the boundaries on the conditions of confinement for prisoners are set by the Eighth Amendment. Here, the prison provides Lindell with basic food, shelter, clothing, and medical care. We are satisfied that the incidental items which Lindell claims to have been denied the ability to purchase when his prison account was frozen do not rise to an Eighth Amendment claim of cruel and unusual punishment. *See, e.g., Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (" 'An institution's obligation under the eighth amendment is at an end if it furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. ") (Citations omitted.)

*Equal Protection*

¶ 9. Finally, Lindell argues that requiring prisoners to file trust account statements and freezing the funds in their accounts until their filing fees have been paid violates the equal protection clauses of the United States and Wisconsin constitutions because the practice "discriminates against incarcerated citizens." *See* U.S. CONST. amend. XIV; WIS. CONST. art. I, § 1. Unless a legislative classification infringes upon a fundamental right or discriminates against a suspect class, however, the principle of equal protection requires only that the classification bear a "rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

■

¶ 10. Lindell asserts that Wisconsin has made prisoners a suspect class by enacting WIS. STAT. § 940.29. That statute, however, does no more than criminalize abuse of persons in an incarcerated facility. It does not raise prisoners to a constitutionally protected class status for purposes of equal protection analysis, and we are aware of no other case or authority which does so. To the contrary, we have in the past applied the rational-relation test to prisoner legislation. *See, e.g., State ex rel. Khan*, 2000 WI App 109 at ¶ 9. Furthermore, despite Lindell's attempts to characterize his claims as constitutional in nature, we are persuaded that what is really at stake here is discretionary spending money. We conclude that Lindell has failed to demonstrate he has a fundamental interest at stake in the present litigation. Therefore, Khan's equal protection claims do not warrant strict scrutiny, and will be reviewed under the rational-relation standard.

■

¶ 11. We are satisfied that freezing prisoner trust account statements to pay for the costs of civil litigation initiated by the prisoner is a rational means of conserving state resources and deterring frivolous litigation "because it has been recognized that prisoners, as a group, have little incentive for refraining from suit, and account for a disproportionate amount of meritless litigation." *Id*. at ¶ 10. Prisoners who are required to pay the costs of their litigation out of their discretionary spending money are more likely to limit their use of the court system to meritorious claims.

¶ 12. In sum, we conclude that WIS. STAT. § 814.29(1m) survives constitutional scrutiny, and

therefore deny Lindell's motion to set aside the order freezing his trust account until the filing fee in this matter has been paid.

*By the Court.*—Motion denied.