APPELLANT PRO SE
Eric D. Smith
Westville, Indiana

ATTORNEY FOR AMICUS CURIAE
PUBLIC DEFENDER OF INDIANA
Susan K. Carpenter
Public Defender of Indiana

Gregory L. Lewis
J. Michael Sauer
Deputy Public Defenders
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Frances H. Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA PROSECUTING ATTORNEYS
COUNCIL
J. Scott Callahan
Bedford, Indiana

Stephen J. Johnson
Indianapolis, Indiana

---

# In the
# Indiana Supreme Court



FILED
Apr 09 2008, 11:36 am

CLERK
of the supreme court,
court of appeals and
tax court

## No. 49S02-0804-CV-166

ERIC D. SMITH,

*Appellant (Plaintiff below),*

v.

INDIANA DEPARTMENT OF
CORRECTION, ET AL.,

*Appellees (Defendants below).*

---

Appeal from the Marion Superior Court, No. 49D01-0511-CT-43581
The Honorable Cale J. Bradford, Judge

---

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0601-CV-58

---

**April 9, 2008**

**Boehm, Justice.**

In 2004, Indiana enacted a "Three Strikes Law" providing that an inmate "may not file a complaint" if the inmate has filed three prior lawsuits that were dismissed as frivolous under the "Frivolous Claim Law." Other jurisdictions seek to curb litigant abuses by imposing conditions on lawsuits by "frequent filers." Indiana's Three Strikes Law goes further and purports to close the courthouse door altogether. We hold that this legislation violates the Open Courts Clause of the Indiana Constitution.

## Facts and Procedural History

In 2005, Eric D. Smith was an inmate at the Maximum Control Facility at Westville Correctional Facility in LaPorte County, Indiana. On July 23, Smith created a makeshift hammock by tying a bed sheet to some water pipes, climbed into the hammock, and refused to come down until Department of Correction employees provided him with copies of a brief he planned to file before the Indiana Court of Appeals. Officers used chemical spray and pepper balls to force Smith down.

On November 7, 2005, Smith filed a complaint in Marion Superior Court against the Indiana Department of Correction ("DOC"), the Maximum Control Facility, and various DOC employees, alleging that the method used to remove him from the hammock caused him injury and pain. He sought $300,000 in damages and injunctive and declaratory relief.

On December 15, 2005, the defendants moved to dismiss the complaint on the ground that its filing was prohibited by the Three Strikes Law.[1] The Marion Superior Court granted the defendants' motion to dismiss, finding that Smith's prior dismissed cases deprived it of subject matter jurisdiction over this claim.

---

[1] On November 2, 2005, the LaPorte Superior Court had dismissed another complaint by Smith before that court under the Frivolous Claim Law, Indiana Code section 34-58-1-2. The LaPorte case was the third civil action in which a court found that the Frivolous Claim Law barred Smith's claim, and the LaPorte order of dismissal included a ruling that the Three Strikes Law, Indiana Code section 34-58-2-1, prevents Smith from filing a new complaint or petition without a determination that he is in immediate danger of serious bodily injury.

Smith appealed pro se, challenging the Three Strikes Law as a violation of article I, section 12 of the Indiana Constitution. The Court of Appeals upheld the statute and affirmed the trial court. Smith v. Ind. Dep't of Corr., 853 N.E.2d 127, 129 (Ind. Ct. App. 2006). We grant transfer today.

**Standard of Review**

A statute is presumed constitutional. Sims v. U.S. Fid. & Guar. Co., 782 N.E.2d 345, 349 (Ind. 2003) (citing Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996)). "We do not presume that the General Assembly violated the constitution unless the unambiguous language of the statute so mandates." Id. A statute is nullified on constitutional grounds only where that result is "clearly rational and necessary." Id. (quoting Bd. of Comm'rs v. Kokomo City Plan Comm'n, 263 Ind. 282, 286, 330 N.E.2d 92, 95 (1975)).

**Frivolous Claim Law and Three Strikes Law**

Both the Frivolous Claim Law and the Three Strikes Law became effective on July 1, 2004, as a part of Public Law 80-2004, section 6, which was designed to screen and prevent abusive and prolific offender litigation in Indiana. See Smith v. Huckins, 850 N.E.2d 480, 483 (Ind. Ct. App. 2006). The Frivolous Claim Law applies only to "offenders," defined for these purposes in Indiana Code section 34-6-2-89(b) as "a person who is committed to the department of correction or incarcerated in a jail." (West Supp. 2007). The Frivolous Claim Law provides in pertinent part:

> (a) A court shall review a complaint or petition filed by an offender and shall determine if the claim may proceed. A claim may not proceed if the court determines that the claim:
>
> > (1) is frivolous;
> >
> > (2) is not a claim upon which relief may be granted; or
> >
> > (3) seeks monetary relief from a defendant who is immune from liability for such relief.
>
> (b) A claim is frivolous under subsection (a)(1) if the claim:
>
> > (1) is made primarily to harass a person; or
> >
> > (2) lacks an arguable basis either in:
> >
> > > (A) law; or

(B) fact.

Id. § 34-58-1-2.

The Three Strikes Law provides:

> If an offender has filed at least three (3) civil actions in which a state court has dismissed the action or a claim under IC 34-58-1-2, the offender may not file a new complaint or petition unless a court determines that the offender is in immediate danger of serious bodily injury (as defined in IC 35-41-1-25).

Id. § 34-58-2-1.

Smith does not challenge the constitutionality of the Frivolous Claim Law but argues that the prohibition of subsequent litigation imposed by the Three Strikes Law violates the Open Courts Clause found in article I, section 12 of the Indiana Constitution.[2] That clause provides that: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." The Court of Appeals rejected Smith's claim. The Court of Appeals first found that there is no "fundamental" right of access to the courts. The Court of Appeals then noted that in Martin v. Richey, 711 N.E.2d 1273 (Ind. 1999), we explained that a statute of limitations limits the substantive right that gives rise to a claim, but does not abrogate the right to seek redress in court. The court viewed the Three Strikes Law as comparable to a statute of limitations which acts only as a limiting device. The Court of Appeals balanced the right of a prisoner to bring a civil action against the burden of frequent litigation on the court system. Smith v. Ind. Dep't of Corr., 853 N.E.2d 127, 135 (Ind. Ct. App. 2006) ("Given the General Assembly's balancing of an offender's right to bring a civil action with the heavy burden that those suits have placed on our judicial system, Indiana Code § 34-58-2-1 does not unreasonably deny offenders the right of access to the courts and is therefore facially constitutional under the Open Courts Clause.").[3] In

---

[2] Smith also argues that the Three Strikes Law violates article 1, sections 1, 20, and 23 of the Indiana Constitution. Because we hold that the Three Strikes Law violates the Open Courts Clause, it is unnecessary to reach the merits of these claims.

[3] Some other states have used a similar balancing test for challenges under their open courts provisions. See, e.g., Smith v. Fisher, 965 So.2d 205, 208 (Fla. Dist. Ct. App. 2007) ("Although courts generally oppose any burden being placed on the right of a person to seek redress of injuries from the courts, the legislature may abrogate or restrict a person's access to the courts if it provides: 1) a reasonable alternative remedy or commensurate benefit; or 2) a showing of an overpowering public necessity for the abolishment of the right, and finds that there is no alternative method of meeting such public necessity.")

4

a similar case decided after <u>Smith</u>, the Court of Appeals again held that the Three Strikes Law does not violate the Open Courts Clause because the heavy burden on the courts from prolific filers outweighs the rights of those offenders to bring any more claims. <u>Higgason v. Ind. Dep't of Corr.</u>, 864 N.E.2d 1133, 1136-37 (Ind. Ct. App. 2007), <u>trans. denied</u> ("Consistent with the protections of Article I, Section 12, any restriction must be a rational means to achieve a legitimate legislative goal. . . . I.C. § 34-58-2-1 does not unreasonably deny offenders the right of access to the courts, but offers a balance between an offender's right to bring a civil action and the heavy burden that those claims have placed on our judicial system.").

For the reasons explained below, we conclude that the Three Strikes Law violates the Open Courts Clause of the Indiana Constitution. The Indiana Constitution does not balance the inconvenience of entertaining a claim against the right to seek redress from the courts subject to reasonable conditions. To the contrary, the right to petition the courts is absolute. This does not mean that meritless claims may not be summarily dismissed under the Frivolous Claim Law. It does mean that an individualized assessment of each claim is required, and a claim cannot be dismissed on the basis of who presents it rather than whether it has merit.

### I. The Open Courts Clause

Most other states have a constitutional provision declaring in one form or another that courts shall be open and a remedy is to be afforded according to the law. Jennifer Friesen, <u>State Constitutional Law: Litigating Individual Rights, Claims, and Defenses</u> § 6 app. (4th ed. 2006). There is little direct evidence of the history or purpose of these provisions. Indeed, "[r]esearch published to date reveals little more than that the provision comes from the Magna Carta Chapter 40, as viewed through the lens of Sir Edward Coke's Second Institute." Jonathan M. Hoffman, <u>By the Course of the Law: The Origins of the Open Courts Clause of State Constitutions</u>, 74 Or. L. Rev. 1279, 1281 (1995). This court adopted that view of the historical background of Indiana's Open Courts Clause in <u>State v. Laramore</u>, 175 Ind. 478, 484-85, 94 N.E. 761, 763

---

(citation omitted); <u>Leonard v. Abbott</u>, 171 S.W.3d 451, 457 (Tex. Ct. App. 2005) ("A claim of unconstitutionality under the open courts provision will only succeed if the claimant 1) has a cognizable common-law cause of action being restricted by a statute, and 2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. In applying this test, we consider both the statute's general purpose and the extent to which the claimant's right to bring a common-law cause of action is affected.") (internal citations omitted).

(1911). Chapter 40 of the Magna Carta provides "to no one will we sell, to no one deny or delay right or justice." William McKechnie, <u>Magna Carta: A Commentary on the Great Charter of King John</u> 395 (2d ed. 1914). Writing in 1671, Coke understood Chapter 40 to give all citizens the right of access to a "remedy by the course of the law" for "injury":

> And therefore every Subject of this Realm, for injury done to him in *bonis*, *terris*, *vel persona*, by any other Subject, be he Ecclesiastical, or Temporal, Free or Bond, Man or Woman, Old or Young, or be he outlawed, excommunicated, or any other without exception, may take his remedy by the course of the Law, and have justice and right for the injury done to him, freely without sale, fully without any denial, and speedily without delay.

David Schuman, <u>Oregon's Remedy Guarantee</u>, 65 Or. L. Rev. 35, 39 (1986) (quoting Faith Thompson, <u>Magna Carta: Its Role in Making of the English Constitution 1300-1629</u>, at 365 (1948)). Some variation of Coke's formulation of this right appears in many state constitutions, including Indiana's.[4]

Some states have understood their similar provisions either to limit legislative alteration of remedies or as no more than a mandate to the courts to administer justice impartially. <u>Compare</u> Jennifer Friesen, <u>State Constitutional Law: Litigating Individual Rights, Claims, and Defenses</u> § 6.02[3], at 6-9 (4th ed. 2006) ("[S]tate court decisions divide sharply on the central issue of whether (and how) these clauses do limit legislative attempts to alter remedies available under the common law.") <u>with</u> <u>Meech v. Hillhaven West, Inc.</u>, 776 P.2d 488, 493 (Mont. 1989) ("The history of the guarantee indicates that framers of state constitutions inserted remedy clauses to insure equal administration of justice. Clauses insuring administration of justice are aimed at the judiciary, not the legislature."). We think neither is a correct understanding of the Indiana provision.

An Open Courts Clause first appeared in article I, section 11 of the Indiana Constitution of 1816. The current version was adopted in article I, section 12 of the 1851 Constitution. Neither the constitutional debates nor contemporary judicial decisions shed light on the meaning or purpose of this guarantee. In <u>McIntosh v. Melroe Co.</u>, 729 N.E.2d 972 (Ind. 2000), we

---

[4] "The constitutions of thirty-seven states contain passages which, in substance, provide that the courts 'shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation.'" Note, <u>Constitutional Guarantees of a Certain Remedy</u>, 49 Iowa L. Rev. 1202, 1202 (1964); <u>see, e.g.</u>, Conn. Const., art. I, § 10; Fla. Const., art. I, § 21; Ky. Const., § 14; Miss. Const., art. 3, § 24; Ohio Const., art. I., § 16; Pa. Const., art. I, § 11; Utah Const., art. I, § 11.

considered whether the clause prevented the legislature from altering or abrogating a common law cause of action. We held it does not, and observed that "apart from the text itself, precedents of this Court, and precedents from other states with similar provisions, we find no relevant guideposts on this point. In particular, there appears to be no unique Indiana history surrounding the adoption of [the Open Courts] Clause in 1816 or its redrafting in 1851." Id. at 974.

We think the text itself is instructive on the issue before us today. It has been observed that "[t]he phrase 'all courts shall be open' is so indefinite and general that it could be interpreted in a number of ways." Robert Twomley, The Indiana Bill of Rights, 20 Ind. L.J. 211, 229 (1945). At the margins, this is presumably true. But as a matter of ordinary usage, the provision that remedy by due course of law is available to all is readily understood to mean, at a minimum, that to the extent the law provides a remedy for a wrong, the courts are available and accessible to grant relief. Moreover, the history of the text itself provides some persuasive evidence bearing on the issue presented in this case. Two distinct concepts are embedded in Coke's explanation of the Magna Carta. Chapter 40 speaks to the availability of a remedy for injury and also assures impartial and prompt administration of justice. Article I, section 11 of the 1816 Constitution, like the Magna Carta, addressed both in one rather lengthy sentence, "[t]hat all Courts shall be open, and every person, for an injury done to him, in his lands, goods, person, or reputation shall have remedy by the due course of law; and right and justice administered without denial or delay." Quoted in Charles Kettleborough, Constitution Making in Indiana, 1780-1850, at 86 (Art Craft Press, Inc. 1971) (1916). Article I, section 12 of the 1851 Constitution separated these two concepts into distinct sentences:

> All courts shall be open; and every person, for injury done him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

We think this demonstrates an embracing of the notion, well accepted by 1851, of an independent judiciary, and guarantees access to the courts to redress injuries to the extent the substantive law recognizes an actionable wrong. As such, the first sentence imposes some limitations on the actions of the legislative and executive branches. The second sentence addresses the values of speed and impartiality and is, as Meech put it, "aimed at the judiciary, not the legislature."

Judicial decisions reinforce the reading suggested by the text. Although some jurisdictions have taken a more restrictive view of their open courts provisions, Indiana has given it a more generous interpretation. We have long seen the Open Courts Clause as prohibiting outright closure of access to the courts. Laramore observed that the second sentence of article I, section 12 also requires "unpurchased and impartial justice":

> This provision of our Constitution, while getting its substance, as similar provisions in other state constitutions do, from Magna Carta, may be a broader guaranty of free, unpurchased and impartial justice than the similar provision in that great instrument sought to establish.

175 Ind. at 484-85, 94 N.E. at 763. And Square D Co. v. O'Neal, 225 Ind. 49, 56, 72 N.E.2d 654, 657 (1947), held that the Open Courts Clause "does not prohibit the Legislature from imposing regulations and restrictions as to how this court may take jurisdiction; it cannot, however, take jurisdiction away from this court. Any regulation which would virtually deny our citizens the right to resort to this court would necessarily be unreasonable." More recently, we held that an occurrence-based statute of limitations violates the Open Courts Clause if it is applied to bar an otherwise valid claim before the claimant can learn of the claim. Martin v. Richey, 711 N.E.2d 1273, 1282 (Ind. 1999). But we have also held that the Open Courts Clause does not prevent the legislature from modifying or restricting common law rights and remedies. McIntosh, 729 N.E.2d at 977-78; see also Midtown Chiropractic v. Ill. Farmers Ins. Co., 847 N.E.2d 942, 947 (Ind. 2006). Nor does it prevent the legislature from imposing conditions on the pursuit of a claim in court. Thus, the legislature can require mediation and impose filing fees as conditions to be met before judicial relief is available. See Fuchs v. Martin, 845 N.E.2d 1038, 1041 (Ind. 2006) (mandatory mediation is not a violation of article I, section 12 because it does "not prevent a party from obtaining a judicial resolution of a case nor obstruct a party's access to the courts"); Laramore, 175 Ind. at 484-85, 94 N.E. at 763 (holding that fees paid to a sheriff did not violate article I, section 12 because the Clause intended "to prohibit, not fees, like those prescribed in the fee table, but gratuities, or exactions, given or demanded for the direct purpose of influencing the course of legal proceedings") (citations omitted). In short, the Open Courts Clause does not prohibit all conditions on access to the courts, but it does prevent the legislature from arbitrarily or unreasonably denying access to the courts to assert a statutory or common law cause of action that is in itself unmodified and unrestricted. Martin, 711 N.E.2d at 1283.

## II. Constitutionality of the Three Strikes Law

Many states have provisions designed to ease the burden of frequent and frivolous filings. Prolific filers' access to the courts has been subjected to a variety of conditions, for example, posting of a security bond or prior screening by the court. See, e.g., Cal. Civ. Proc. Code § 391 (West 2004) (requiring security if plaintiff (a) has lost or delayed five civil actions pro se in the past seven years; (b) continues to try to relitigate a closed case pro se; (c) repeatedly engages in frivolous or bad faith tactics pro se; or d) has previously been declared a frequent filer); Colo. Rev. Stat. § 13-17.5-102.7 (2007) (inmate who has had three civil actions based upon prison conditions dismissed cannot file any further civil action against a prison in forma pauperis unless imminent danger of serious bodily injury); Del. Code Ann. tit. 10, § 8803(e) (1999) (requiring litigant who has filed frivolous or malicious litigation to obtain leave of court to file any actions); Fla. Stat. Ann. § 68.093 (West 2005) (requiring security from plaintiff who has lost five or more civil actions pro se in the past five years and is not reasonably likely to prevail on the merits); Fla. Stat. Ann. § 944.279(1) (West 2006) (subjecting prisoner who brings a frivolous or malicious suit to discipline from the Department of Corrections); Haw. Rev. Stat. § 634J (1993) (requiring security from plaintiff who has acted in bad faith or lost five civil actions pro se in the last seven years, relitigates in bad faith, or has been declared vexatious in another state); Tex. Civ. Prac. & Rem. Code Ann. § 11 (Vernon 2005) (requiring security from plaintiff who has either delayed, brought in bad faith, or lost at least five civil suits in past seven years, or has been declared vexatious; and who has no reasonable probability of success in suit). These conditions have frequently survived constitutional challenge where the individual litigant has been found to abuse the right of access to courts. See, e.g., Molski v. Evergreen Dynasty Corp., 500 F.3d 1047 (9th Cir. 2007) (requiring leave of court to file claims pursuant to ADA Title III); Day v. State, 903 So.2d 886 (Fla. 2005) (barring litigant from filing further pro se actions); Grundstein v. Ohio, No. 1:06 CV 2381, 2006 WL 3499990 (N.D. Ohio Dec. 5, 2006) (requiring leave of court to file any actions); State ex rel. Lindell v. Litscher, 659 N.W.2d 413 (Wis. Ct. App. 2003) (barring indigent prisoner from filing in forma pauperis unless asserting a fundamental right).

In addition to legislation in several states, section 101(a) of the Federal Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(g) (2000), denies a frequent filer inmate the ability to file in forma pauperis. Federal courts have upheld the PLRA, finding that it does "not

deprive [inmates] of adequate, effective, and meaningful access to the courts," <u>Hampton v. Hobbs</u>, 106 F.3d 1281, 1284 (6th Cir. 1997), because it does not prevent inmates from pursuing claims but merely requires that they pay the filing fee. <u>See, e.g.</u>, <u>Ashley v. Dilworth</u>, 147 F.3d 715, 716-17 (8th Cir. 1998).[5]

Indiana is unique in imposing a complete ban on filing based on the plaintiff's prior litigation. The Three Strikes Law sweeps with a broader brush than the law of any other United States jurisdiction because it operates as an indiscriminate statutory ban, not merely a condition to access to the courts.[6] The law bars claims purely on the basis of the plaintiff's prior activity without regard to the merits of the claims presented. By its own terms, such a ban on presenting any claims at all denies a "remedy by due course of law" for obvious wrongs that are otherwise redressable in court. The exception in the Three Strikes Law for claims of "immediate danger of

---

[5] Smith presents no claim under the Federal Constitution, and the Federal Constitution has no open courts provision. Nevertheless, federal law is instructive. The Supreme Court has held that prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 821-22 (1977). This forecloses complete denial of court access, even by individually tailored court order. <u>See</u> <u>Riccard v. Prudential Ins. Co.</u>, 307 F.3d 1277, 1298 (11th Cir. 2002) ("An injunction designed to protect against 'abusive and vexatious litigation' cannot completely foreclose a litigant from any access to the courts."); <u>DeLong v. Hennessey</u>, 912 F.2d 1144, 1149 (9th Cir. 1990) ("[O]rders restricting a person's access to the courts must be based on adequate justification supported in the record and narrowly tailored to address the abuse perceived."); <u>Abdullah v. Gatto</u>, 773 F.2d 487 (2nd Cir. 1985) (holding that trial court order forbidding prisoner from filing any actions regarding his arrest, trial, conviction and imprisonment was overbroad because it prevented the filing of meritorious claims); <u>In re Oliver</u>, 682 F.2d 443, 446 (3d Cir. 1982) ("Access to the courts is a fundamental tenet of our judicial system; legitimate claims should receive a full and fair hearing no matter how litigious the plaintiff may be."); <u>In re Green</u>, 669 F.2d 779, 786 (D.C. Cir. 1981) (holding that a court could impose even "onerous conditions" on litigants as long as they are "not so burdensome as to deny the litigant meaningful access to the courts").

[6] Some courts have found that even conditions short of full closure are unconstitutional. <u>See, e.g.</u>, <u>In re Lawsuits of Carter</u>, 510 S.E.2d 91, 94 (Ga. Ct. App. 1998) (holding that requiring the plaintiff to find an attorney to sign pleadings was unconstitutional because "the order prejudges the case and denies process altogether, much less due process, unless Carter as plaintiff relinquishes his constitutional right to self-representation"). Even states without an explicit protection of open access to courts in their respective state constitutions prohibit complete court closure. <u>See, e.g.</u>, <u>Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety</u>, 110 P.3d 30, 43-44 (Nev. 2005) (holding that "even though courts may, as a general rule, restrict vexatious litigants' access, constitutional considerations prohibit a complete ban on filings by indigent proper person litigants if the ban prevents the litigant from proceeding in criminal cases and in original civil actions that sufficiently implicate a fundamental right; such orders are impermissible").

serious bodily injury" does not cure this defect. For example, simple theft or conversion of an inmate's property would be immunized from court redress.

The sweeping ban on all litigation imposed by the Three Strikes Law is unnecessary to accomplish the legitimate objectives of the legislation. The dissents contend that our holding today will clog the courts to the exclusion of legitimate litigants. This claim is unfounded. In order to dismiss a case under the Three Strikes Law, the defendant must present evidence that the plaintiff is an "offender" and has suffered three previous dismissals under the Frivolous Claim Law. The court must read these papers, and also the complaint to see that it does not fall within the exception for bodily injury. The court must then issue a ruling. Processing a frivolous claim, which the Constitution demands, will impose little more burden on the courts beyond those that would be required if the Three Strikes Law were upheld. If the claim is truly frivolous, the court can dismiss it under the Frivolous Claim Law. If not, the Open Courts Clause guarantees to any person the right of access to the court subject to reasonable conditions and a determination of whether the law affords a remedy. And, as noted, other courts have upheld other less stringent methods, such as requiring filing fees, to deter frivolous filing if that is a concern.

The State cites Blanck v. Indiana Department of Correction, 829 N.E.2d 505 (Ind. 2005), in support of its claim that the Three Strikes Law is a valid exercise of legislative power. Blanck held that the prison discipline statutes on which the plaintiff relied did not create a private cause of action. Id. Blanck also upheld the provision in the Administrative Orders and Procedures Act denying court jurisdiction over claims of prison discipline. Id. Neither holding supports the view that the legislature may deny inmates access to the courts to present any claim at all. Indeed, to the extent Blanck speaks at all to the issue before us, it acknowledged that "the Open Courts Clause requires that where a cause of action has been created (by constitution, statute, or common law), courts must be open to provide remedy by due course of law." Id. at 511 (citing McIntosh v. Melroe Co., 729 N.E.2d 972, 979 (Ind. 2000)). Thus, although there is no right under the Open Courts Clause to any particular cause of action and the legislature may create, modify, or abolish a particular cause of action, to the extent there is an existing cause of action, the courts must be open to entertain it.

The trial court did not address the state's contention that the complaint must be dismissed under the Frivolous Claim Law. Accordingly, we express no opinion on that issue.

11

**Conclusion**

The trial court's order dismissing Smith's complaint under the Three Strikes Law is reversed. This case is remanded to the trial court to address whether complaint should be dismissed under the Frivolous Claim Law.

Dickson and Rucker, JJ., concur.

Shepard, C.J., dissents with separate opinion.

Sullivan, J., dissents with separate opinion.

**Shepard, Chief Justice, dissenting.**

Today's decision means that a good many Hoosiers will have to wait longer for their day in court. People who have suffered personal injuries will have their jury trials delayed. Children whose future custody is up in the air will receive a ruling later rather than sooner. Indeed, criminal defendants seeking relief from unlawful searches will need to stay in custody a little longer.

The attention these and other litigants now receive is instead being transferred to the very most abusive of the frequent filers in the state's prisons.

The Court has chosen an excellent poster boy to highlight the policy embedded in its ruling. Eric Smith initiated thirteen civil appeals just in 2005-06. Other prisoners being given relief today have generated even more.

Many of Smith's lawsuits have been formally adjudicated as frivolous—either by trial courts or appellate courts or both. This is not easy to achieve in Indiana's legal system, which affords all convicted defendants an appeal at public expense and a collateral attack on their convictions at public expense. And ours is a court system in which judicial officers lean mightily against declaring claims or lawsuits frivolous in order to keep open the courthouse door.

Against this backdrop, Mr. Smith's achievement in the field of filing serial lawsuits is an impressive one.

The majority rates the cause of assuring Smith a hearing on the merits of every lawsuit he chooses to file as so important to the life of our state that it takes the extraordinary step of invalidating the General Assembly's effort to assure access to justice for all of Indiana's citizens.

The decision to do so is not compelled by the organic documents of Western justice. One can revere Magna Carta and still say with confidence that those who created it would be appalled that so many citizens should be pushed aside to make room for prison litigants pursuing their

fifteenth or one hundred fifteenth lawsuit.  The majority's assurance that ordinary citizens will not be disadvantaged by today's ruling is really quite paradoxical.  Not much time will be required to afford multiple filers the due process Americans hold as so important, my colleagues say, because trial judges will normally dismiss their pleadings by doing only a little more than reading the prisoner's name.

**Sullivan, Justice, dissenting.**

The majority's opinion goes much further than necessary on these facts to protect a Hoosier's cherished right of access to the courts. The principle that the majority admirably seeks to vindicate could be just as easily accomplished by declaring the statute constitutional as applied here, but recognizing that there may be circumstances when that would not be so.

By going further than it must, the majority needlessly creates opportunities for those who would abuse the right of access by filing multiple frivolous lawsuits. For every case these frequent filers pursue, a trial or appellate court either has less time for cases of divorce, child abuse, and crime, or the Legislature and property tax payers must provide additional resources to the courts so that all the above needs may be met. The Legislature struck a reasonable balance here in saying that a prisoner who abuses his rights under article I, section 12, of the Indiana Constitution three times may not do so again unless in immediate danger of serious bodily injury. There may be other appropriate exceptions, as the Court suggests. But because those exceptions are not present here, I see no basis for finding the statute unconstitutional in this case, either on its face or as applied.