

# IN THE
# Court of Appeals of Indiana



FILED
Mar 07 2025, 8:59 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

J.T.,

*Appellant-Respondent*

v.

A.H.,

*Appellee-Petitioner*

March 7, 2025

Court of Appeals Case No.
23A-PO-2872

Appeal from the Wayne Circuit Court

The Honorable April R. Drake, Judge

Trial Court Cause No.
89C01-2305-PO-87

**Opinion by Judge Pyle**
Judges May and Brown concur.

**Pyle, Judge.**

## Statement of the Case

J.T. ("J.T.") appeals the trial court's grant of a protective order to J.T.'s former friends, A.H. ("A.H.") and M.H. ("M.H.").[1] J.T. claims that there is insufficient evidence to support the issuance of the protective order. Concluding that the evidence is sufficient, we affirm the trial court's judgment.

We affirm.

## Issue

> Whether there is sufficient evidence to support the trial court's issuance of the protective order to A.H. and M.H.

## Facts

J.T., A.H., and M.H. were all childhood friends. In December 2021, A.H. and M.H., who were engaged and living together, invited J.T. to stay at their home because J.T. was "hyper-fixated on being safe from his family." (Tr. Vol. 2 at 10). While J.T. was staying at their home, A.H. and M.H. became concerned about J.T.'s "interrupted sleep patterns [and] the hyper-fixation on his slights over the years." (Tr. Vol. 2 at 9). For example, J.T. "ha[d] spoken to [M.H.] of

---

[1] Although A.H.'s name is the only name listed on the caption, the petition for a protective order was filed on behalf of both A.H. and M.H. In addition, the protective order enjoined J.T. from committing acts of harassment against both A.H. and M.H.

a detailed violent desire to physically harm a coworker as a result of [the coworker's] behavior." (Tr. Vol. 2 at 8). J.T. also spoke to A.H. about his 2016 conviction resulting from him shooting a gun in the air. J.T. repeatedly told A.H. that if he ever felt threatened again, he would shoot to kill. A.H. knew that J.T. owned guns.

[4] Based on these behaviors, M.H. asked J.T. to "seek help." (Tr. Vol. 2 at 11). Concerned that M.H. was going to "force him into a mental institution against his will[,]" J.T. moved out of A.H. and M.H.'s home after having lived there for two weeks. (Tr. Vol. 2 at 11). After J.T. had moved out, J.T. sent text messages to M.H. accusing M.H. of being a child molester and of being unfaithful to A.H. M.H.'s friends also told M.H. that J.T. was making the same allegations about him to them.

[5] In mid-December 2021, M.H. sent J.T. a text message urging J.T. to get help before he hurt himself or someone else. J.T. responded that if something happened to M.H., J.T. would take care of A.H. J.T. sent M.H. other texts that M.H. perceived as being threatening, and M.H. asked J.T. several times to stop contacting him and A.H. M.H. further told J.T. that M.H. and A.H. considered J.T. to be "a serious danger to [them]." (Tr. Vol. 2 at 14).

[6] In October 2022, J.T. sent the following social media message to A.H.'s mother ("A.H.'s mother"): "[M.H.] threatened to sue me and my wife. I'm sorry I left the stuff at their house, but I wasn't 'hitting on [A.H.]' like he has been spouting off. . . . That's the second time [M.H.] has threatened me and it will be the

last." (Ex. Vol. 1 at 49). A.H.'s mother showed the message to A.H. and M.H. and blocked J.T. from sending her further social media messages.

[7] In May 2023, J.T. sent the following text message to M.H.: "You fucked up. Get ready broke bitch." (Ex. Vol. 1 at 3). Ten minutes later, J.T. sent the following text message to M.H.: "Let's see which one of us can pay a lawyer longer." (Ex. Vol. 1 at 3).

[8] That same month, M.H. and A.H. filed a petition seeking a protective order against J.T. The petition alleged that J.T. had "committed repeated acts of harassment[,]" had "threatened to cause physical harm[,]" and had "placed [them] in fear of physical harm[.]" (App. Vol. 2 at 7). In support of their petition, M.H. and A.H. attached the December 2021 text messages that J.T. had sent to M.H., the October 2022 social media message that J.T. had sent to A.H.'s mother, and the May 2023 text messages that J.T. had sent to M.H.

[9] The trial court held a protective order hearing in July 2023. At the hearing, M.H. testified that over the years that he had known J.T., J.T. had demonstrated a pattern of violent and threatening behaviors to perceived slights by others. M.H. further testified that while J.T. was staying at M.H. and A.H.'s house in December 2021, J.T. had "a way of re-telling stories when he [was] heated that [was] emotionally similar to the event that he describe[d.]" (Tr. Vol. 2 at 10). M.H. specifically explained that J.T. "pantomime[d]" "being physical or being aggressive with another individual." (Tr. Vol. 2 at 10). M.H. testified that J.T.'s behavior had initially been alarming. M.H. further testified

that as J.T.'s behavior had become more consistent, the behavior had "put [M.H.] in fear because [he had] no idea what [J.T. was] capable of." (Tr. Vol. 2 at 10).

[10] M.H. also testified that he believed that J.T.'s May 2023 text messages were "an indication of an acceleration of behaviors of aggression[.]" (Tr. Vol. 2 at 24). According to M.H., the basis for his belief was his "observation of [J.T.]'s behavior over the years." (Tr. Vol. 2 at 25). M.H. further testified that J.T. had "repeatedly been able to leverage his financial position . . . to . . . remove the culpability or repercussions of his behavior." (Tr. Vol. 2 at 25).

[11] Following M.H.'s testimony, the trial court told the parties that it would need to reschedule the completion of the hearing. Five days after the hearing, in July 2023, J.T., acting pro se, filed a complaint against A.H., M.H., and others, including family members and then President Joseph R. Biden, Jr., in the United States District Court for the Western District of Louisiana. The complaint alleged that A.H. and M.H. had violated "RICO, Megan's Law, Freedom of Speech, Double-jeopardy, etc." (Ex. Vol. 1 at 22).

[12] In addition, J.T. filed a motion to intervene in another federal case involving the State of Missouri and then President Biden. J.T.'s motion included two three-day notices to M.H. and A.H. to terminate their tenancies in two different homes, one that M.H. and A.H. rented and another that A.H. owned. The notices further ordered M.H. and A.H. "to quit and deliver up possession of the premises to [J.T.]" (Ex. Vol. 1 at 37, 38). The reason that J.T. gave for the

termination of the tenancies was "Violation of Megan's Law, Violation of Usufruct, Violation of Succession, Violation of Revocable Trust[.]" (Ex. Vol. 1 at 37, 38).

[13] The trial court held the continuation of the protective order hearing in October 2023. At the hearing, A.H. testified that she was afraid of J.T. because the harassment had not stopped and had continued even after the previous protective order hearing. A.H. further testified that she was afraid of J.T. because he had previously told her that if he felt threatened, he would shoot to kill. Thereafter, J.T. had sent A.H.'s mother a social media message stating that M.H. had threatened him. A.H. testified that she did not want "to bury [M.H.]" (Tr. Vol. 2 at 46). A.H. further testified that although J.T. had filed in federal court two three-day notices to A.H. and M.H. to terminate their tenancies in two different homes, J.T. did not own those homes or have any interest in them.

[14] J.T. also testified at the hearing. Specifically, J.T. testified that he had not intended to harass A.H. and M.H.

[15] Following the hearing, in November 2023, the trial court granted A.H. and M.H.'s petition for a protective order. In its order, the trial court specifically found that A.H. and M.H. "ha[d] shown, by a preponderance of the evidence, that repeated acts of harassment ha[d] occurred sufficient to justify the issuance" of the protective order. (App. Vol. 2 at 36). The trial court further

found that J.T. "represent[ed] a credible threat to the safety of [A.H.] or a member of [her] household." (App. Vol. 2 at 36).

[16] J.T. now appeals.

## Decision

[17] At the outset, we note that A.H. argues that J.T. did not timely file a notice of appeal. Indiana Appellate Rule 9(A) provides that "[a] party initiates an appeal by filing a Notice of Appeal with the Clerk (as defined in Rule 2(D)) within thirty (30) days after the entry of a Final Judgment is noted in the Chronological Case Summary." Here, the trial court issued the protective order on November 2, 2023, and J.T. filed his notice of appeal on November 30, 2023. J.T.'s notice of appeal was timely filed. We now turn to his argument that there is insufficient evidence to support the issuance of the protective order.

[18] When reviewing a trial court's issuance of a protective order, we apply a two-tiered standard of review. *S.D. v. G.D.*, 211 N.E.3d 494, 497 (Ind. 2023). We consider whether the evidence supports the trial court's findings and, if so, whether the findings support the judgment. *Id*. In deference to the trial court's proximity to the issues, we disturb the order only where there is no evidence supporting the findings or the findings fail to support the order. *Fox v. Bonam*, 45 N.E.3d 794, 798 (Ind. Ct. App. 2015).

[19] We neither reweigh the evidence nor determine the credibility of witnesses, and we consider only the evidence favorable to the trial court's decision. *S.D.*, 211

N.E.3d at 497. In this regard, our Indiana Supreme Court has explained as follows:

> Indeed, our trial courts are far better than appellate courts at weighing evidence and assessing witness credibility. And this is particularly true in protective order cases, where our trial judges see and hear the parties interact as they relay details about intensely personal, traumatic events. Our review of this evidence on appeal is far less clear from our vantage point in the far corner of the upper deck.

*Id*. at 498 (internal citations and quotation marks omitted). Further, the party appealing the issuance of the protective order must establish that the trial court's findings are clearly erroneous, meaning a review of the record leaves us firmly convinced that a mistake has been made. *R.W. v. J.W.*, 160 N.E.3d 195, 203 (Ind. Ct. App. 2020).

[20] Under the Indiana Civil Protection Order Act ("the CPOA"), "[a] person who is or has been subjected to harassment may file a petition for an order for protection against a person who has committed repeated acts of harassment against the petitioner." IND. CODE § 34-26-5-2(b). Harassment is "conduct directed toward a victim that includes, but is not limited to, repeated or continuing impermissible contact: (1) that would cause a reasonable person to suffer emotional distress; and (2) that actually causes the victim to suffer emotional distress." IND. CODE § 34-6-2-51.5(a). "Harassment" does not include "statutorily or constitutionally protected activity[.]" IND. CODE § 34-6-2-51.5(b).

"[I]mpermissible contact" includes (1) following or pursuing the victim; (2) communicating with the victim; and (3) posting on social media if the post is directed to the victim or refers directly or indirectly to the victim. IND. CODE § 35-45-10-3(a). Further, this list is nonexclusive. IND. CODE § 35-45-10-3(b).

To justify the issuance of a protective order, the harassment must objectively include a present and credible threat. *S.H. v. D.W.*, 139 N.E.3d 214, 220 (Ind. 2020). A credible threat is "plausible or believable." *Id.* The burden is on the petitioner to show, by a preponderance of the evidence, "that there are reasonable grounds to believe that the respondent presently intends to harm the petitioner or the petitioner's family." *Id.*

Here, J.T. argues that there is insufficient evidence to support the issuance of the protective order for two reasons: (1) the evidence does not support the trial court's finding that his contacts with A.H. and M.H. constituted harassment; and (2) the evidence does not support the trial court's finding that he was a credible threat to A.H. and M.H. We address each of his contentions in turn.

**1. Harassment**

J.T. argues that the evidence does not support the trial court's finding that his contacts with A.H. and M.H. constituted harassment. We disagree.

J.T. first contends that his two federal court filings "did not constitute harassment within the meaning of the Civil Protection Order Act." (J.T.'s Br. 18). According to J.T., "filing court documents to pursue a civil action to seek

a judicial remedy is constitutionally protected activity that cannot support a protection order." (J.T.'s Br. 19).

[26] However, this Court has previously stated that there is no constitutionally protected right to file a frivolous lawsuit. *Parks v. Madison County*, 783 N.E.2d 711, 724 (Ind. Ct. App. 2002), *reh'g denied, trans. denied*. Under the Frivolous Claim law, which was designed to screen and prevent abusive and prolific offender litigation in Indiana, a claim is frivolous if the claim is made primarily to harass a person or lacks an arguable basis in either law or fact. *Smith v. Indiana Department of Correction*, 883 N.E.2d 802, 804 (Ind. 2008) (citing IND. CODE § 34-58-1-2). *See also Bertucci v. Bertucci*, 177 N.E.3d 1211, 1225 (Ind. Ct. App. 2021) (citing IND. CODE § 34-52-1-1 and explaining that in determining whether a prevailing party is entitled to attorney fees, a claim is frivolous if it is taken primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law).

[27] Here, J.T.'s civil complaint alleged that A.H. and M.H. had violated "RICO, Megan's Law, Freedom of Speech, Double-jeopardy, etc." (Ex. Vol. 1 at 22). Further, his motion to intervene in the other federal case included two three-day notices to M.H. and A.H. to terminate their tenancies in two different homes and to deliver possession of the homes to J.T. The reason that J.T. gave for the termination of the tenancies was "Violation of Megan's Law, Violation of Usufruct, Violation of Succession, Violation of Revocable Trust[.]" (Ex. Vol.

1 at 37, 38). J.T. did not own or have any interest in either of the homes. These claims were clearly frivolous, and we conclude that they constituted harassment within the meaning of the CPOA.

[28] J.T. further argues that "[a]n isolated text message after one-and-a-half years of no contact does not constitute 'harassment.'" (J.T.'s Br. 16). J.T. appears to be referring to the two May 2023 text messages that he sent to M.H. However, we have just determined that the frivolous lawsuits that J.T. filed in federal court *after* the first day of the protective order hearing also constituted harassment. Indeed, these frivolous lawsuits provided evidence that J.T. acted upon the threats that he had made in the May 2023 text messages. In addition, our review of the evidence reveals that J.T. sent threatening messages to M.H. in December 2021, and J.T. also threatened M.H. in a social media message that J.T. sent to A.H.'s mother in October 2022.

[29] In light of this evidence, and mindful of the deference that we owe to the trial court's proximity to the issues, we simply cannot say there is no evidence supporting the trial court's finding that J.T. harassed A.H. and M.H. Stated differently, our review of the record does not leave us firmly convinced that a mistake has been made. *See R.W.*, 160 N.E.3d at 203.

[30] We further note that J.T's argument that he did not intend to harass A.H. and M.H. is a request that we reweigh the evidence, which we will not do. *See S.D.*, 211 N.E.3d at 497. The evidence supports the trial court's finding that J.T.'s contacts with A.H. and M.H. constituted harassment.

## 2. Credible Threat

J.T. also argues that the evidence does not support the trial court's finding that he was a credible threat to A.H. and M.H. We disagree.

J.T. specifically argues that "[t]here is absolutely no evidence that J.T. ever committed a violent act against M.H. or A.H." (J.T.'s Br. 16-17). However, neither the CPOA nor case law requires a showing of prior violence as proof of a credible threat. Further, our review of the evidence reveals that M.H. and A.H. testified that, based on their history with J.T. and their observations of his behavior over the years, J.T.'s communications with them had placed them in fear. From this evidence, the trial court could have reasonably concluded that J.T. posed an objectively credible threat to A.H. and M.H. To conclude otherwise would require us to reweigh the evidence and reassess witness credibility, which we will not do. *See S.D.*, 211 N.E.3d at 497.

Because the evidence supports the trial court's findings that J.T.'s contacts with A.H. and M.H. constituted harassment and that J.T. was a credible threat to the safety of A.H. and M.H., we conclude that there is sufficient evidence to support the trial court's issuance of the protective order to A.H. and M.H. Accordingly, we affirm the trial court's judgment.[2]

---

[2] We note that we disagree with J.T.'s contention that the trial court's order required more detailed findings of fact. We addressed a similar argument in *Costello v. Zollman*, 51 N.E.3d 361 (Ind. Ct. App. 2016), *trans. denied*, wherein the appellant argued that the trial court's findings of fact were inadequate. In addressing the

Affirmed.

May, J., and Brown, J., concur.

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana


ATTORNEY FOR APPELLEE

Ronald J. Moore
The Moore Law Firm, LLC
Richmond, Indiana

---

appellant's argument, we explained that "even though findings are required to grant a petition for a protective order, the findings need not be extensive." *Id*. at 365. We further noted that in *Hanauer v. Hanauer*, 981 N.E.2d 147, 149 (Ind. Ct. App. 2013), the trial court's findings were not extensive but were adequate for appellate review of the trial court's decision. *Costello*, 51 N.E.3d at 365. In the *Hanauer* case, 981 N.E.2d at 149, the trial court found that "'domestic or family violence . . . [had] occurred sufficient to justify the issuance of [the Protective Order].' (App. at 9.) The court further found that Husband 'represent[ed] a credible threat to the safety of [Wife] . . . or a member of . . . [Wife's] household.' (App. at 9.)"

Here, the trial court's order sufficiently found that A.H. and M.H. "ha[d] shown, by a preponderance of the evidence, that repeated acts of harassment ha[d] occurred sufficient to justify the issuance of" of the protective order. (App. Vol. 2 at 36). The trial court further found that J.T. "represent[ed] a credible threat to the safety of [A.H.] or a member of [her] household." (App. Vol. 2 at 36). The trial court's findings, which were based on the evidence presented at the hearing, are adequate for appellate review.